IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FREEDOM MORTGAGE CORPORATION, )
　　　　　　　　Plaintiff, )
)
)
　　　　　v. )
)
IRWIN FINANCIAL CORPORATION, and )
IRWIN MORTGAGE CORPORATION, )
)
　　　　　　　　Defendants. )

C. A. No. 08-146-GMS

## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF THEIR MOTION TO DISMISS, STAY OR TRANSFER
## TO THE NORTHERN DISTRICT OF CALIFORNIA

OF COUNSEL:

David J. Berger
Dominique-Chantale Alepin
Wilson Sonsini Goodrich & Rosati, PC
650 Page Mill Road
Palo Alto, California 94304-1050
(650) 493-9300

Jenny L. Dixon
Wilson Sonsini Goodrich & Rosati, PC
One Market Street
Spear Tower, Suite 3300
San Francisco, California 94105
(415) 947-2000

Raymond J. DiCamillo (#3188)
dicamillo@rlf.com
Richards, Layton & Finger
920 N. King Street
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendants*

Dated: April 23, 2008

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ........................................................... 2

SUMMARY OF ARGUMENT ..................................................................................... 2

STATEMENT OF FACTS ............................................................................................. 3

    A.    The Parties Involved In The Dispute ..................................................... 3

    B.    The Subject Of The Dispute .................................................................... 3

    C.    The Duplicative Proceedings ................................................................... 4

ARGUMENT .................................................................................................................... 8

    I.    THE COURT SHOULD DISMISS, STAY OR TRANSFER THIS
ACTION  UNDER THE FIRST-FILED RULE ..................................................... 8

        A.    The First-Filed Rule................................................................................... 8

        B.    Because the California Action Is The First-Filed Action, The
Delaware Action Should Be Dismissed, Stayed Or Transferred............. 10

            1.    The Two Actions Are Duplicative................................................ 10

            2.    A Complete Identity of Parties Is Not Required For
Application Of The First-Filed Rule............................................. 11

            3.    Minor Variances in Issues Do Not Prevent Application of
the First-Filed Rule ..................................................................... 14

            4.    The Circumstances Surrounding The Filing of This Suit
Weigh In Favor Of The Dismissal, Stay Or Transfer Of
This Action.................................................................................. 15

            5.    The California Action Is Progressing at a Faster Pace Than
This Case Prompting Application of the First-Filed Rule ............ 16

CONCLUSION................................................................................................................ 17

## TABLE OF AUTHORITIES

Page(s)

### CASES

*(888) Justice, Inc. v. Just Enters., Inc.,*
No. 06-CV-6410 (GBD), 2007 WL 2398504 (S.D.N.Y. Aug. 22, 2007)......................................8

*Abovepeer, Inc. v. Recording Industry Ass'n of America, Inc.,*
166 F. Supp. 2d 655 (N.D.N.Y. 2001), aff'd, sub. nom.
*BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., Inc.,*
21 Fed. Appx. 52 (2d Cir. 2001) ............................................................................................11

*Advanta Corp. v. Visa U.S.A., Inc.,*
No. Civ. A 96-7940, 1997 WL 88906 (E.D. Pa. Feb. 19, 1997) ...............................9, 11

*Alltrade, Inc. v. Uniweld Products, Inc.,*
946 F.2d 622 (9th Cir. 1991) ..................................................................................8, 9

*Centocor, Inc. v. MedImmune, Inc.,*
No. C 02-03252 CRB, 2002 WL 31465299 (N.D. Cal. Oct. 22, 2002)...........................9

*Certainteed Corp. v. Celotex Corp.,*
No. Civ. A. 471, 2005 WL 217032 (Del. Ch. Jan. 24, 2005) .....................................6, 7

*E.E.C.O. v. Univ. of Pa.,*
850 F.2d 969 (3d Cir. 1988), *aff'd on other grounds,* 493 U.S. 182 (1990)..........................passim

*Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.,*
388 F. Supp. 2d 426 (D. Del. 2005)....................................................................................13

*Hanover Fire & Cas. Ins. Co. v. Sieron,*
No. Civ. A. 06-2758, 2007 WL 120058 (E.D. Pa. Jan. 9, 2007) ..........................9, 11, 14

*Lafferty v. St. Riel,*
495 F.3d 72 (3d Cir. 2007)..................................................................................................8

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir. 1982) ................................................................................................8

*Pearson v. Component Technology Corp.,*
247 F.3d 471 (3d Cir. 2001)...............................................................................................13

*Shire U.S., Inc. v. Johnson Matthey, Inc.,*
No. 07-CV-2958, 2008 WL 399333 (E.D. Pa. Feb. 14, 2008) ...................................9, 10

*Time Warner Cable, Inc. v. GPNE Corp.,*
497 F. Supp. 2d 584 (D. Del. 2007).............................................................................9, 10, 11

### STATUTES

28 U.S.C. § 1406(a) ...........................................................................................................2, 8

Fed. R. Civ. P. 12(b)(3)...................................................................................................2, 8

Fed. R. Civ. P. 19...........................................................................................................12

RLF1-3276209-1

## INTRODUCTION

This action is an attempt to defeat the first-filed action pending in the United States District Court for the Northern District of California (the "California action") that involves related parties litigating essentially the same subject matter and issues presented by this case. In an effort to avoid the first-filed rule, plaintiff in this case has transformed a straight-forward breach of contract action into a multi-headed hydra, complete with competing actions in parallel, cross-country litigations.

In the California action, Irwin Home Equity Corporation ("IHE") and Irwin Union Bank and Trust Company ("Irwin Union"), subsidiaries of defendant Irwin Financial Corporation ("IFC"), have sued plaintiff Freedom Mortgage Corporation ("Freedom") for breach of an agreement to repurchase particular defective mortgage loans. In this action, Freedom has sued IFC and another one of its subsidiaries, defendant Irwin Mortgage Company ("IMC"), under a different but related contract (an asset purchase agreement) seeking a determination that Freedom does not have an obligation to repurchase the loans that are the subject of the California action. Freedom contends that IFC and IMC are in breach of the asset purchase contract because IHE and Irwin Union have sought to enforce their contractual rights against Freedom in the California action. Freedom makes passing reference to the existence of these related proceedings but purports to distinguish the California action as involving claims concerning different parties and a different contract. The truth is that the cases are mirror actions of each other; indeed the substance of the relief that Freedom seeks in this action is that IFC compel its subsidiaries IHE and Irwin Union to abandon their claims against Freedom and perform the contract at issue in the California action. Simply put, Freedom has taken its affirmative defenses to the claims in the California action and asserted them as claims against IFC and IMC before this Court.

Freedom attempts to hide this reality by not specifically naming IHE and Irwin Union -- the plaintiffs in the California action -- as defendants in this action. However, IHE and Irwin Union are clearly necessary parties as this action will attempt to litigate whether acts by those parties were improper. Indeed, the claims brought in this case should have been filed as

counterclaims in the California action. This type of duplicative litigation and gamesmanship is precisely the behavior that the first-filed rule is designed to address and rectify.

As discussed below, the Court should dismiss or stay this action or order that it be transferred to the Northern District of California for consolidation with the California action.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed its Complaint on March 13, 2008. Pursuant to stipulation and an order entered by this Court on April 7, 2008, the date for responding to the Complaint was extended to April 23, 2008.

## SUMMARY OF ARGUMENT

Defendants move for an order dismissing, staying or transferring this action to the Northern District of California pursuant to the first-filed rule and under Fed. R. Civ. P. 12(b)(3) or 28 U.S.C. § 1406(a). Under the first-filed rule, subsequently filed, duplicative litigation is dismissed, stayed or transferred in favor of the first-filed litigation. Here, the Northern District of California first had possession of the subject matter of this action by virtue of the litigation filed by IHE and Irwin Union. The California action involves litigation of the same obligations and rights at issue here in this second-filed action. Plaintiff's attempt to plead around this action does not alter the fact that this action is duplicative of the California action and that its claims could have (and should have) been brought in the California action. The interests of judicial economy and comity dictate the dismissal, stay or transfer of this second-filed action.

## STATEMENT OF FACTS

### A.    The Parties Involved In The Dispute

Defendant IFC is a bank holding company which provides a broad range of financial services to consumers and small businesses.    Declaration of Dominique-Chantale Alepin ("Alepin Decl."), Ex. A; Request for Judicial Notice filed herewith at 2.  As a holding company, IFC is the owner (directly or indirectly) of several subsidiaries including defendant IMC, and non-parties Irwin Union and IHE.[1]  Alepin Decl., Ex. A.  Each of these Irwin Entities fulfills a specific purpose in the banking world.  Irwin Union provides commercial banking to consumers and small businesses in the Midwest and Western United States.  *Id.*  IHE originates and services first and second mortgages.  *Id.*  IMC was a national mortgage lender and loan service provider.  *Id.*

Plaintiff Freedom is in the mortgage loan business.  Freedom's Complaint and Jury Demand ("Compl.") ¶ 1.  As discussed below, Freedom acquired IMC's mortgage origination assets through an asset purchase.  *Id.*

### B.    The Subject Of The Dispute

In May 2006, Freedom and IMC signed a letter of intent regarding the potential sale of certain IMC assets and Freedom began conducting due diligence on IMC's business.  Compl. ¶ 19.  After completing its due diligence, Freedom purchased certain assets, and assumed certain liabilities, from IMC in accordance with the Asset Purchase Agreement dated as of August 7, 2006.  *Id.* ¶¶ 22-23.  Among the assets assigned to Freedom under the Asset Purchase Agreement was a previously existing Correspondent Loan Purchase and Sale Agreement, dated as of December 11, 2003, as modified by the Addendum to Correspondent Loan Purchase and Sale Agreement (Third Party Originators) dated January 6, 2004, and the Addendum to Correspondent Loan Purchase and Sale Agreement (Non-Standard Loans) dated February 10,

---

[1]  Collectively, IFC, Irwin Union, IHE and IMC will be referred to as the "Irwin Entities".

2004 (together, the "Loan Purchase Agreement") between IHE and Irwin Union, on the one hand, and IMC, on the other hand.[2]  Compl. ¶¶ 1, 24-27.

Under the Loan Purchase Agreement, IMC could sell mortgage loans to IHE and Irwin Union from time to time if the loans complied with specific guidelines. Compl. ¶ 26 and Exhibit B thereto; *see also* Alepin Decl. Ex. B (hereinafter referred to as the "Cal. Compl."). IMC (and subsequently, Freedom), however, were obligated to repurchase from IHE and Irwin Union any loans which were "defective." Compl. ¶ 27; Cal. Compl. ¶¶ 16-18. "Defective" loans included, among others, those on which the first payment had not been made. Compl. Exhibit B at 14; Cal. Compl. ¶ 17. After the asset purchase closed, Freedom executed an Addendum to Correspondent Loan Purchase and Sale Agreement (Termination of Non-Standard Loans and Other Modifications) dated as of October 2, 2006 (which Freedom refers to as the "Addendum") that expanded the definition of "defective" loans to include those on which the first, second and/or third payments had not been made. Compl. ¶¶ 41-42. Numerous loans that Freedom originated and sold to IHE and Irwin Union after the asset purchase closed were "defective" for one or more reasons either under the Loan Purchase Agreement or the Addendum. Cal. Compl. ¶¶ 29-36. IHE and Irwin Union made numerous requests throughout 2007 and into 2008 that Freedom repurchase these loans as required under the Loan Purchase Agreement. Compl. ¶ 6; Cal. Compl. ¶¶ 33-36.

Freedom has refused to repurchase these defective loans (Compl. ¶ 6) and now contends that the Addendum is void and unenforceable under a variety of legal theories. *Id.* at 20-21.

### C.    The Duplicative Proceedings

On January 22, 2008, IHE and Irwin Union filed suit in the United States District Court for the Northern District of California against Freedom based on the venue provision in the Loan Purchase Agreement. *See* Cal. Compl., Ex. A § 8.11 ("[a]ny action between the parties relating

---

[2] Freedom refers to the Loan Purchase Agreement as the "IHE Agreement." Compl. ¶ 1.

to or arising under this Agreement shall be tried in the federal or state courts located in Contra Costa County, California.").[3] IHE and Irwin Union asserted two claims: breach of the Loan Purchase Agreement and Addendum given Freedom's repeated refusals to repurchase defective loans (Cal. Compl. ¶¶ 38-44) and for negligence in that Freedom had made certain misrepresentations with respect to the condition of the loans submitted to IHE and Irwin Union for purchase (Cal. Compl. ¶¶ 45-53). The terms of the Loan Purchase Agreement and Addendum were specific as to what constituted "defective" loans and what events gave rise to Freedom's obligation to repurchase such loans from IHE and Irwin Union.

Freedom had a range of options for responding to the claims by IHE and Irwin Union in the California action, including asserting affirmative defenses, such as the contention that the Addendum (which only covers a fraction of the loans that were subject to repurchase) was void or voidable, bringing counter-claims against IHE and Irwin Union, and any cross-claims against third parties, such as IFC and IMC, or moving to join IFC and IMC as necessary parties. Freedom however chose a more convoluted route designed to defeat IHE and Irwin Union's choice of forum for this first-filed action.

On March 12, 2008, Freedom simultaneously filed (i) an initial claim for arbitration in the National Arbitration Forum against IHE and Irwin Union and (ii) this action in the United States District Court for the District of Delaware against IFC and IMC. By its Arbitration Claim, which is premised on the permissive arbitration provision in the Loan Purchase Agreement, Freedom seeks a declaration that the Addendum was signed under duress and is void or voidable, and damages for fraud in connection with the execution of the Addendum. Alepin Decl., Ex. E

---

[3] The Loan Purchase Agreement also contains a provision that states, in part "[u]pon written request by either party . . . any claim, demand or cause of action, which arises out of or is related to this Agreement . . . *may* be resolved by binding arbitration in the State of California . . . ." Cal. Compl., Ex. A, §8.09 (emphasis added); Compl. ¶ 15. IHE and Irwin Union, both of whom were involved in the negotiation of the Loan Purchase Agreement and this particular provision, understood and intended that the parties could file suit or seek arbitration; arbitration was not mandatory.

(hereinafter referred to as the "Arbitration Claim"). At the same time, Freedom sought an order staying the arbitration proceedings in order to proceed with this action against IFC and IMC. Arbitration Claim ¶ 52.

The next day, Freedom filed a motion to dismiss or stay the California action and for an order compelling arbitration, which motion is currently set for hearing on April 30, 2008. Alepin Decl., Ex. C. Freedom requested that the Northern District dismiss the California action so that Freedom's Arbitration Claim seeking "a declaration of *all* rights concerning this action" could proceed. *Id.* at 5 (emphasis added). What Freedom neglected to mention to the Northern District, however, was that its Arbitration Claim contained a request that arbitration proceedings be stayed so that Freedom can obtain a resolution of its "action in the U.S. District Court, District of Delaware . . . against [IHE and Irwin Union's] parent Irwin Financial, and IMC." Arbitration Claim ¶¶ 9-10, 52. The arbitration panel granted that request. Alepin Decl., Ex. F. IHE and Irwin Union have opposed Freedom's motion to compel arbitration on the grounds that, while courts have found that contract provisions containing permissive language such as the term "may" can serve as the basis to compel arbitration in light of the presumption in favor of arbitration under the Federal Arbitration Act, the first-filed rule and the importance of judicial economy weighed in favor of the Northern District retaining jurisdiction of the California action. Alepin Decl., Ex. D. This is particularly true given that Freedom obtained a stay of the very arbitration proceedings that it commenced and that it seeks to compel.[4]

The Complaint in this action essentially reads as Freedom's defense to the claims at issue in the California action. *Compare* Compl. *with* Cal. Compl. Freedom's only real claim[5] is for an

---

[4] IHE and Irwin Union's opposition to Freedom's motion to dismiss or stay the California action and for an order to compel arbitration makes clear that they would agree to arbitration, in one forum, of all of the parties' various claims. Alepin Decl., Ex. D. But Freedom obtained a stay of the arbitration that it commenced. Freedom's maneuvering would instead require litigation in two separate courts (California and Delaware).

[5] Freedom has asserted a claim for "specific performance," but this is an equitable remedy for breach of contract not a cause of action. *Compare* Compl. ¶¶ 59-73 *with* Compl. ¶¶ 74-82; *see*
(continued...)

alleged breach of the Assignment Agreement by IFC for failure to disclose that IFC was negotiating a material change with IHE to the Loan Purchase Agreement (*i.e.* the Addendum). Compl. ¶¶ 69, 79. At first glance, this claim may appear slightly different from the claims in the California action because Freedom has packaged it as a claim against other Irwin Entities under a different, but related contract. The substance of Freedom's claim, however, remains what performance is required under the Loan Purchase Agreement and the Addendum – the very subject that is at issue in the California action.

More generally, Freedom's wide litany of relief requested and factual allegations demonstrates that the subject matter of the California action is the same as this action and if litigation were to proceed in two different federal district courts there would be a substantial overlap of issues and duplicative proceedings. For example, Freedom has requested that (1) IFC compel IHE to abandon attempts to enforce the Addendum as it is allegedly void, concede the California action on such grounds and reaffirm the original Loan Purchase Agreement; (2) IFC repurchase loans that Freedom is obligated to repurchase from IHE and Irwin Union; and (3) IFC indemnify Freedom for defense of the California action. Compl. at 20-21. In essence while Freedom purports to style this action as seeking relief from IFC, *i.e.*, compelling IFC to direct its subsidiaries to take action (*id.*; Compl. ¶ 63), the issues to be litigated focus on actions taken by IHE in connection with the signing of the Addendum including a claim that the Addendum, a contract establishing rights and obligations between IHE and Irwin Union, on one hand, and Freedom, on the other hand, is allegedly void or voidable due to alleged fraud or duress exerted by IHE over Freedom. *Id.* ¶¶ 1, 3-4, 36- 38, 42-44, 69, 79.

---

(...continued from previous page)
*Certainteed Corp. v. Celotex Corp.*, No. Civ. A. 471, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005) (holding that specific performance is an equitable remedy).

**ARGUMENT**

I. **THE COURT SHOULD DISMISS, STAY OR TRANSFER THIS ACTION UNDER THE FIRST-FILED RULE**

As discussed below, dismissal, stay or transfer of this action is warranted under the first-filed rule or under either Fed. Civ. R. 12(b)(3) or 28 U.S.C. § 1406(a).[6]  This action and the California action involve the same subject matter and are duplicative regardless of Freedom's convoluted attempt to differentiate the actions.  Contrary to what Freedom may contend, the first-filed rule does not require identical issues or parties but instead looks to whether the subject is the same and litigation of both actions would be duplicative.  Given that both actions involve purported rights and obligations under the Loan Purchase Agreement and the Addendum, the subject is the same and there will be substantial overlap of the issues.  Accordingly, duplicity of litigation and inconsistency of results is highly probable if this action is allowed to proceed.  The Court should dismiss or stay this action, or alternatively transfer it to the Northern District of California so that it and the California action can be tried together.

A. **The First-Filed Rule**

Courts within the Third Circuit and elsewhere have repeatedly recognized the importance of judicial economy and the problems that arise when cases containing common facts and parties are litigated in different forums. *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990); *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).  For this reason, courts have "adopted what has become known as the 'first-filed' rule." *E.E.O.C.*, 850 F.2d at 971.  Under this policy of comity, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Id.*

---

[6] Any of these options is available to the Court at this juncture. *Lafferty v. St. Riel*, 495 F.3d 72 (3d Cir. 2007); *(888) Justice, Inc. v. Just Enters., Inc.*, No. 06-CV-6410 (GBD), 2007 WL 2398504, at *7 (S.D.N.Y. Aug. 22, 2007) (dismissing the case for improper venue under 12(b)(3) or in the alternative §1406(a) as "original claims made in this case could have been filed as counterclaims in the first-filed Missouri action.").

(internal citations omitted). Absent unusual circumstances, courts within the Third Circuit generally invoke the first-filed rule in cases of concurrent federal jurisdiction to give deference to the first-filed action. *Id.* (citations omitted). This rule "encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Id.*

The first-filed rule "reduces the possibility of dispositive differences between the jurisdictions and ensures that litigants receive a single determination of their controversy, rather than multiple decisions which may conflict and require separate appeals." *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 588 (D. Del. 2007) (granting defendant's motion to dismiss case in favor of the first-filed action in Texas brought by defendant); *E.E.O.C.*, 850 F.2d at 972 (surveying case law and discussing that, while the first-filed rule is discretionary, the "general principle is to avoid duplicative litigation.").

Application of the first-filed rule does not require the exact identity of the parties or issues. *E.E.O.C.*, 850 F.2d at 971 (holding that the first-filed rule applies to the court "which first has possession of the subject matter"); *Time Warner*, 497 F. Supp. 2d at 589; *Alltrade*, 946 F.2d at 622 (affirming district court's finding that the first-to-file rule applied and staying action to allow first-filed action to proceed even when that action involved additional claims and parties); *Centocor, Inc. v. MedImmune, Inc.*, No. C 02-03252 CRB, 2002 WL 31465299, at *3 (N.D. Cal. Oct. 22, 2002). The first-filed rule does not hinge on identity of the parties or issues but rather on "which court first obtains possession of the **subject of the dispute** . . . ." *Advanta Corp. v. Visa U.S.A., Inc.*, No. Civ. A 96-7940, 1997 WL 88906, at *2 (E.D. Pa. Feb. 19, 1997) (emphasis added); *E.E.O.C.*, 850 F.2d at 971 ("[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it."); *Hanover Fire & Cas. Ins. Co. v. Sieron*, No. Civ. A. 06-2758, 2007 WL 120058, at * 4 (E.D. Pa. Jan. 9, 2007); *Shire U.S., Inc. v. Johnson Matthey, Inc.*, No. 07-CV-2958, 2008 WL 399333, at *3 (E.D. Pa. Feb. 14, 2008) (finding that "courts within and outside this Circuit have found no requirement that the

parties in the concurrent actions be the same in order for the first-to-file rule to apply."). This serves the goal of the first-filed rule, which is to "prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes from *common matters*." *Time Warner*, 497 F. Supp. 2d at 589.

**B.      Because the California Action Is The First-Filed Action, The Delaware Action Should Be Dismissed, Stayed Or Transferred**

There can be no dispute that the California action is the first-filed action.[7] This combined with an examination of the two complaints, Freedom's attempt at artful drafting aside, demonstrates that the subject of the two actions is the same and that the actions are duplicative. Accordingly, the Court should dismiss, stay or transfer this action to the Northern District of California.

**1.      The Two Actions Are Duplicative**

In the California action, IHE and Irwin Union seek to enforce Freedom's obligation to repurchase particular mortgage loans under the Loan Purchase Agreement and Addendum. In this action, Freedom seeks to establish that it has no obligation to repurchase these loans under the Loan Purchase Agreement and Addendum on the grounds that the Addendum is allegedly void or voidable or the product of fraud. While Freedom characterizes its claims as arising under the Asset Purchase Agreement between Freedom, on the one hand, and IFC and IMC, on the other, the substance of the dispute concerns the Loan Purchase Agreement and Addendum and IHE and Irwin Union's demand that Freedom fulfill its obligations under those contracts. Thus, the subject of the two actions is the same.

While Freedom carefully crafted its complaint to avoid the appearance of bringing a

---

[7] The Northern District of California has personal and subject matter over the dispute and that court is an appropriate venue for claims arising under the Loan Purchase Agreement, which is the crux of this action. Cal. Compl. ¶ 7.

duplicative suit,[8] it has implicitly conceded that the California and Delaware actions are duplicative. In its motion to dismiss the California action, Freedom argues that IHE and Irwin Union's complaint should be dismissed and that the court should compel arbitration because the Arbitration Claim "seek[s] a declaration of all rights concerning this action." Alepin Decl., Ex. C at 5. Without skipping a beat, Freedom then pleads in its Arbitration Claim that the arbitration should be stayed as resolution of the Delaware action would moot any claims that might arise in the arbitration. Arbitration Claim, ¶ 13. By logical extension of its arguments, Freedom has conceded that the Delaware and California actions involve the same subject: a determination of the parties' (IHE and Irwin Union on the one hand, and Freedom on the other hand) obligations under the Loan Purchase Agreement and Addendum.

Given that the two actions are the same, which Freedom has conceded, this action should be dismissed, stayed or transferred in favor of the California action. *See Hanover*, 2007 WL 120058 at *4 (rejecting plaintiff's "inconsistent arguments and baseless distinctions of 'subject matter' 'similar issues' or 'same parties'" in order to apply the first-filed rule to transfer the second-filed suit).

### 2.    A Complete Identity of Parties Is Not Required For Application Of The First-Filed Rule

It is well-established that complete identity of parties between the two actions is not required in order for a court to apply the first-filed rule to dismiss a later-filed action. *See Time Warner*, 497 F. Supp. 2d at 589-90. Instead, application of the first-filed rule hinges upon which court first takes possession of the subject of the dispute, not necessarily the parties to it. *E.E.O.C.*, 850 F.3d at 971 (holding that the first-filed rule applies to the court "which first has possession of the subject matter"); *Hanover*, 2007 WL 120058 at *3-4; *Advanta*, 1997 WL

---

[8] Freedom noted that there were "related proceedings" but attempted to differentiate those proceedings by asserting that neither IFC nor IMC were parties to the California action and that the California action involves a dispute regarding the Loan Purchase Agreement rather than the Asset Purchase Agreement. Compl. ¶¶ 13-17.

88906 at *3; *Abovepeer, Inc. v. Recording Indus. Ass'n of Am., Inc.,* 166 F. Supp. 2d 655, 661-662 (N.D.N.Y. 2001), aff'd, sub. nom. *BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., Inc.,* 21 Fed. Appx. 52 (2d Cir. 2001) ("Parties whose 'interests are clearly aligned' may be treated as if they were the same parties in deciding whether a later-filed action should be stayed in deference to an earlier action.")

In this action Freedom has sued IFC and IMC seeking to compel action by non-parties IHE and Irwin Union based on the relationship between IFC and IMC. While IFC and IMC are not currently parties to the California action pending against Freedom, this cannot prevent application of the first-filed rule given that the subject of the two actions is the same. The fact that IHE and Irwin Union are necessary parties to this action under Fed. R. Civ. P. 19 further supports application of the first-filed rule. Under Fed. R. Civ. P. 19, a party is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

Freedom seeks to litigate the rights and obligations of Freedom, IHE and Irwin Union under the Loan Purchase Agreement and the Addendum. Compl. ¶¶ 3, 7, 37-46. In particular, Freedom seeks a declaration from this Court that the Addendum is void because of actions taken by *IHE* in connection with the signing of the Addendum. Freedom *actually seeks relief* from IHE: Freedom wants this Court to order IFC to compel IHE

> (a) to abandon further attempts to enforce the Addendum, (b) to acknowledge that the Addendum is void, voidable or rescinded, (c) to concede the IHE Arbitration on the grounds that the Addendum is void, voidable or rescinded, and (d) to reaffirm the terms of the IHE Agreement . . . .

Compl. at ¶¶ 20-21.

Freedom, however, has only named IFC and IMC as defendants. Freedom's allegation that IFC is the 100% shareholder of IHE and Irwin Union does not establish that IFC or IMC

-12-

have the legal right to compel IHE or Irwin Union to act, which calls into doubt whether Freedom has sued the correct entities. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) ("mere ownership of a subsidiary does not justify the imposition of liability on the parent."). Just as Freedom could not sue the individual shareholders of a corporation in order to force the corporation to take action, Freedom cannot sue IFC, the shareholder, with the hope that this Court will compel IHE or Irwin Union, the corporation, to take action.

*Ethypharm S.A. France v. Bentley Pharma., Inc.*, 388 F. Supp. 2d 426 (D. Del. 2005) is instructive. This Court held that a subsidiary of the defendant parent company was a necessary party under Fed. R. Civ. P. 19:

> "[P]laintiffs' interactions were almost entirely with [the subsidiary] and not with defendant. [The subsidiary] will possess the necessary witnesses and information pertinent to determining what acts were performed, by whom, and whether the acts were wrongful. Because of this conduct [the subsidiary] may be the only party liable for the obligations under the agreement. Therefore, complete relief cannot be afforded among the present parties."

388 F. Supp. 2d at 431 (citations omitted).

As in *Bentley*, Freedom contends that IHE, not IFC, acted improperly in forcing Freedom to execute the Addendum. *See* Compl. ¶¶ 37-43. Specifically, Freedom contends "IHE improperly refused to honor its consent unless and until Freedom has executed the Addendum." *Id.* ¶ 38. Accordingly, IHE and Irwin Union, IFC subsidiaries, are necessary parties. Litigation concerning rights and obligations under the Loan Purchase Agreement and the Addendum will necessarily require the involvement of IHE and Irwin Union, who are the parties to that contract, not IFC. Similarly, questions concerning liability for alleged improper pressure or influence during the execution of the contested Addendum will necessarily involve IHE and Irwin Union witnesses and documents. *Id.* ¶¶ 37-43. Because IHE and Irwin Union are necessary parties to this action, the fact that Freedom did not name them as parties to this action does not preclude

the Court from applying the first-filed rule to dismiss or stay this action in favor of the California action.[9]

### 3.   Minor Variances in Issues Do Not Prevent Application of the First-Filed Rule

It is well-established that, as with parties, a complete identity of issues between the two actions is not required in order for a court to apply the first-filed rule to dismiss a later-filed action. *Hanover,* 2007 WL 120058 at \*3-4; *EEOC*, 850 F.2d at 971. Here, although Freedom purports to bring claims under the Assignment Agreement, the crux of its contentions, as is clear from the relief requested, centers upon the Loan Purchase Agreement and the Addendum, which form the basis of the California action. *See* Compl. at 20-21 (requesting declaratory relief ordering that the Addendum is void and that IHE drop the California Action). These claims would have been more properly brought as compulsory counterclaims in the California action.

*Hanover* is instructive. In that case, plaintiff filed suit in the U.S. District Court for the Eastern District of Pennsylvania asserting a host of tort and contract claims against defendant arising out of insurance claims for fire damage to properties insured by plaintiff. 2007 WL 120058 at \*1. Defendant moved to dismiss on the grounds of a first-filed action involving plaintiff's denial of coverage that was pending in the Southern District of Illinois. *Id.* Plaintiff opposed this motion arguing that the parties and issues in the two actions were different, particularly since its claims arose under its general agency contract with defendant, and that venue was appropriate in the Eastern District of Pennsylvania because of a forum selection clause in that contract. *Id.* at \*2-4. In concluding that the first-filed rule mandated dismissal of the action, the court looked at whether the claims in the second-filed suit could be brought as compulsory counterclaims (*i.e.* whether they arose out of the same transaction or occurrence) in

---

[9] In addition, as noted below, Freedom can assert the substance of the claims asserted in this action as compulsory counterclaims in the California action. Freedom can also assert cross-claims against IFC and IMC and seek to join these entities as parties in the California action. IFC and IMC have already represented they would be amenable to joinder of such claims. *See* Alepin Decl., Ex. D at 1-2, 6.

determining whether the two actions involved the same issue and therefore required application of the first-filed rule. 2007 WL 120058, at *7.

Here, Freedom's claims should have been brought as compulsory counterclaims or cross-claims in the California action.[10] This action should be dismissed, stayed or transferred in favor of the first-filed suit in California.

### 4.    The Circumstances Surrounding The Filing of This Suit Weigh In Favor Of The Dismissal, Stay Or Transfer Of This Action

As discussed *supra*, courts will typically enforce the first-filed rule and give deference to the plaintiff's choice of forum in a first-filed action unless there are special circumstances that warrant departure from this rule. This inquiry focuses on whether the party who filed first engaged in some behavior or tactics such that the first-filed action should not be accorded deference. Here, there is no reason not to accord deference to IHE and Irwin Union's first-filed action. They filed suit only after repeated attempts to get Freedom to repurchase the defective loans failed and selected a forum expressly provided for in the Loan Purchase Agreement. Freedom, by contrast, has engaged in gamesmanship and forum-shopping.

In an attempt to defeat this motion, Freedom will undoubtedly point to the provision in the Asset Purchase Agreement that provides that venue is proper in this Court for "any action or claim arising out of or relating to the [Asset Purchase Agreement]." Compl. ¶ 12. However, as discussed *supra*, while Freedom represents that its claims arise under the Asset Purchase Agreement, the subject of these claims is what is required under the Loan Purchase Agreement and Addendum. Indeed, the relief Freedom seeks centers upon its rights or obligations, or lack thereof under those contracts. Compl. at 20-21. Accordingly, a review of the allegations of the Complaint and those in the California action demonstrates that the claims brought by Freedom in this action are more appropriately brought in the California action.

---

[10] This is particularly true given that Freedom seeks to litigate its rights and obligations under the Loan Purchase Agreement — a contract with IHE and Irwin Union that contains a venue provision requiring suit in the state or federal courts located in Contra Costa County, California.

This combined with the fact that, after being sued in California, Freedom sought to achieve the upper hand by (1) attempting to dismiss the California action under the guise of proceeding to arbitration, which was subsequently stayed at Freedom's request; and (2) filing suit in this Court without joining the necessary parties makes dismissal or transfer appropriate under these circumstances.

**5.    The California Action Is Progressing at a Faster Pace Than This Case Prompting Application of the First-Filed Rule**

In addition, the proceedings in California are progressing further than the issues in this case. The parties are litigating whether disputes regarding Freedom's obligations under the Loan Purchase Agreement are subject to arbitration. The Northern District of California has also set this matter for a case management conference on May 1, 2008. If this Court retains jurisdiction, this Court will be forced to hear the same dispute as the California court is about to decide regarding whether counterclaims IHE would bring would be subject to arbitration. *E.E.O.C.*, 850 F.2d at 976 (noting that "courts have rejected the [first-filed] rule when the second-filed action had developed further than the initial suit . . .").

## CONCLUSION

For the foregoing reasons, Defendants IFC and IMC respectfully request that the Court dismiss, stay or transfer this action in deference to the first-filed action pending in the Northern District of California.

OF COUNSEL:

David J. Berger
Dominique-Chantale Alepin
Wilson Sonsini Goodrich & Rosati, PC
650 Page Mill Road
Palo Alto, California 94304-1050
(650) 493-9300

Jenny L. Dixon
Wilson Sonsini Goodrich & Rosati, PC
One Market Street
Spear Tower, Suite 3300
San Francisco, California 94105
(415) 947-2000


Dated: April 23, 2008

/s/ Raymond J. DiCamillo
Raymond J. DiCamillo (#3188)
dicamillo@rlf.com
Richards, Layton & Finger
920 N. King Street
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendants*

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2008, I caused to be served by electronic service and hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> William J. Lafferty
> Theodore Kittila
> Karl G. Randall
> Morris, Nichols, Arsht & Tunnell, LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899

I further certify that on April 23, 2008, the foregoing document was served by electronic service and Federal Express to the following:

> John K. Crossman
> Frank C. Welzer
> Zukerman Gore & Brandeis, LLP
> 875 Third Avenue
> New York, NY 10022

Raymond J. DiCamillo (#3188)
dicamillo@rlf.com