IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FREEDOM MORTGAGE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-146-GMS |
| | ) | |
| | ) | **JURY DEMAND** |
| IRWIN FINANCIAL CORPORATION and | ) | |
| IRWIN MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY
OR TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
William M. Lafferty (#2755)
Theodore A. Kittila (#3963)
Karl G. Randall (#5054)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
wlafferty@mnat.com
   *Attorneys for Plaintiff
   Freedom Mortgage Corporation*

OF COUNSEL:

John K. Crossman
ZUKERMAN GORE & BRANDEIS, LLP
875 Third Avenue
New York, New York 10022
(212) 223-6700

May 23, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................II

SUMMARY OF ARGUMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 2

    I.      FACTS ALLEGED IN THE COMPLAINT. ...................................................... 2

    II.     POINTS OF CLARIFICATION. ........................................................................ 5

ARGUMENT .......................................................................................................... 10

    I.      THE CALIFORNIA DISPUTE ALREADY HAS BEEN SENT
         TO ARBITRATION. ........................................................................................ 10

         A.     Even If The Delaware And California Disputes Were The
              Same – And They Are Not The Same – It Is Already Too
              Late To Transfer This Case. .................................................................. 10

         B.     There Is No Judicial Economy In Transferring This Case,
              Since The California Dispute Is Already In Arbitration. ......................... 11

    II.     THIS DELAWARE CASE IS GOVERNED BY AN EXPRESS,
         WRITTEN CHOICE OF DELAWARE AS THE *EXCLUSIVE*
         FORUM FOR DISPUTES. ............................................................................. 11

         A.     Defendants Have Not Satisfied Any Of The  Recognized
              Grounds For Ignoring An Exclusive Choice Of Forum
              Clause. .................................................................................................. 12

         B.     Where – As Here – The Choice Of Forum Clause Includes
              A Covenant Not To Challenge Venue, Defendants Are
              Barred From Doing So. .......................................................................... 13

         C.     Delaware Provides a More Convenient Forum Than Does
              California. .............................................................................................. 14

    III.    BECAUSE THE DISPUTE IN THE CALIFORNIA
         ARBITRATION IS NOT "MATERIALLY ON ALL FOURS"
         WITH THE DISPUTE IN THIS DELAWARE CASE, THE
         FIRST-FILED RULE DOES *NOT* APPLY ...................................................... 15

CONCLUSION ....................................................................................................... 18

TABLE OF AUTHORITIES

Page(s)

CASES

*Advanta Corporation v. Visa USA, Inc.*,
    No. Civ. A. 96-7940, 1997 WL 88906 (E.D. Pa. Feb. 19, 1997)    16-17

*Airport Investors Ltd. P'ship v. Neatrour*,
    No. Civ. A. 03-831, 2004 WL 225060 (D. Del. Feb. 3, 2004)    15

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002)    15-17

*Bbdova, LLC v. Auto. Techs., Inc.*,
    358 F. Supp. 2d 387 (D. Del. 2005)    11-12

*Cisco Sys. v. GPNE Corp.*,
    Civ. No. 07-671, 2008 WL 1758866 (D. Del. Apr. 17, 2008)    17

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
    709 F.2d 190 (3d Cir.1983), *overruled on other grounds by Lauro Lines v. Chasser*,
    490 U.S. 495 (1989)    12

*Complaint of Bankers Trust Co. v. Chatterjee*,
    636 F.2d 37 (3d Cir. 1980)    15

*Crescent Int'l Inc. v. Avatar Communities, Inc.*,
    857 F.2d 943 (3d Cir. 1988)    11

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941)    15

*E.I. duPont de Nemours & Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*,
    197 F.R.D. 112 (D. Del. 2000)    10

*EEOC v. Univ. of Pa.*,
    850 F.2d 969 (3d. Cir. 1988)    15-16

*Foster v. Chesapeake Ins. Co., Ltd.*,
    933 F.2d 1207 (3d Cir. 1991)    12-13

*Grider v. Keystone Health Plan Cent., Inc.*,
    500 F.3d 322 (3d Cir. 2007)    15-17

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)    10

*In re Continental Airlines, Inc.*,
    484 F.3d 173 (3d Cir. 2007) ................................................................. 10

*RGC Int'l Investors, LDC v. ARI Network Servs., Inc.*,
    No. Civ. A. 03-003, 2003 WL 21843637 (D. Del. July 31, 2003) ......... 11-12, 14

*Salovaara v. Jackson Nat'l Life Ins. Co.*,
    246 F.3d 289 (3d Cir. 2001) ................................................................. 11

*Thales Airborne Sys. S.A. v. Univ. Avionics Sys. Corp.*,
    No. Civ. 05-853, 2006 WL 1749399 (D. Del. June 21, 2006) .............. 15

*The Bremen v. Zapata Off-Shore Co.*,
    *407 U.S. 1 (1972)* ................................................................................ 12

## RULES AND STATUTES

28 U.S.C. § 1404(a) ................................................................................... 14

28 U.S.C. § 1406(a) ................................................................................... 14

Fed. R. Civ. P. 12(b)(3) ............................................................................. 14

Plaintiff Freedom Mortgage Corporation ("Freedom") submits this memorandum of law in opposition to the motion by defendants Irwin Financial Corporation ("IFC") and Irwin Mortgage Corporation ("IMC") to dismiss, stay or transfer this case to the Northern District of California.

<u>SUMMARY OF ARGUMENT</u>

The defendants' motion should be denied for the following ten (10) reasons:

1.      There is no longer any active case in California, because on April 28, the Court in California stayed that case in favor of the arbitration already pending in California (the "California Arbitration").

2.      The California Arbitration is totally different from the case before this Court (this "Delaware Case") as demonstrated *infra*.

3.      The defendants in this Delaware Case are not parties to the California Arbitration.

4.      Freedom has no arbitration agreement with the defendants in this Delaware Case and, consequently, Freedom cannot be required to arbitrate with the defendants in this Delaware Case.

5.      This Delaware Case arises from a contract known as the Asset Purchase Agreement ("APA") and the APA is NOT the contract at issue in the California Arbitration.

6.      The exclusive choice of forum under the APA is Delaware.

7.      The California Arbitration arises from a different contract known as the Loan Purchase Agreement between Freedom and IHE (the "IHE Agreement") and each of the defendants in this Delaware Case is NOT a party to that IHE Agreement.

- 1 -

8.     The claims of Freedom in this Delaware Case are based upon the contractual obligations of IFC and IMC under the APA contract, and they are not based upon any rights or obligations conferred under the IHE Agreement (the contract that is at issue in the California Arbitration).

9.     If this Delaware Case is resolved in Freedom's favor, the California Arbitration will become moot, BUT the reverse is NOT true – even if the California Arbitration were resolved against Freedom, it would still be necessary to decide each of the issues raised in this Delaware Case.  This Delaware Case logically comes first.

10.    The defendants' motion is premised upon more than one important error concerning the facts as alleged in the complaint in this action – we address those errors *infra*.

STATEMENT OF FACTS

I.     FACTS ALLEGED IN THE COMPLAINT.

On August 7, 2006, Freedom executed the APA with IFC and IMC (collectively, "Sellers" or "Defendants").   (D.I. 1, filed 3/12/2008, Complaint And Jury Demand ("Complaint") ¶ 22; Compl. Ex. A, Asset Purchase Agreement ("APA") cover page.)  No other parties signed the APA.  (APA p.1, Signature Page.)  The closing of the APA transaction took place in two stages, ultimately completing on September 26, 2006.  (*See* APA § 2.1, Compl. ¶ 22.)  As part of the APA transaction, Freedom purchased substantially all of the origination business of IMC.  (Compl. ¶ 23.)  The purchase price was approximately two hundred seventy-five million dollars ($275,000,000).

Among the purchased assets were offices, files, work in process, customer lists, mortgage loans, and no fewer than 309 different pre-existing contracts, which contracts were assigned to Freedom.  (APA p.1 Background ¶ A)  For certain of the assigned contracts, the

- 2 -

counterparty to the contract was another company affiliated with IFC or IMC. (Compl. ¶¶ 24, 26.) In those situations, where Freedom took an assignment of a contract made with one of IFC or IMC's affiliates, Sellers promised to use their controlling interest in the affiliate to ensure that Freedom received the full benefit of the contract in question. (Compl. ¶¶ 34, 46-47; APA § 6.3(b), 9.1(g).) Thus, for example, if any consent was required to be given by the affiliate, IFC and IMC promised to cause the affiliate to provide such consent. (Compl. ¶¶ 34, 46-47; APA § 6.3(b), 9.1(g).) And if such affiliate wanted to renegotiate any assigned contract, IFC and IMC obligated themselves to force their affiliate not to attempt such a renegotiation. (Compl. ¶¶ 34, 46-47; APA § 6.3(b), 9.1(g).)

The IHE Agreement assigned by IMC to Freedom concerning non-party Irwin Home Equity ("IHE") was one of the affiliate agreements governed by these promises. (Compl. ¶¶ 24-25.)

The particular contract provision which gave Freedom these protections was Section APA Section 9.1(g) of the APA, which reads as follows:

> . . . Seller and Shareholder shall, and shall cause their respective Affiliates to, use commercially reasonable efforts, to assist Buyer at no cost to Buyer to obtain promptly any such approval, consent or waiver….
>
> [Seller and Shareholder] shall commencing on the Closing and prior to obtaining any such approval, consent or waiver, ***provide Buyer***, at no cost to Buyer, with ***all of the rights and benefits*** (subject to all of the obligations) ***under any such Contract***, through the term of such Contact ***including enforcement for the benefit of Buyer of any and all rights of the Seller***, Shareholder or its Affiliates against any other party arising out of any breach or cancellation of any such Contract by such other party and, if requested by Buyer, acting as an agent on behalf of Buyer or as Buyer shall otherwise reasonably require.

(emphasis added).

- 3 -

In addition to these specific promises, Sellers also represented that no material facts had been omitted in the disclosures Sellers had made to Freedom. (Compl. ¶ 32.) However, it would later turn out that material facts had indeed been omitted. (Compl. ¶¶ 28-31.) For example, Sellers omitted to tell Freedom that prior to execution of the APA, IHE and IMC were in secret negotiations to modify the terms of the IHE Agreement, and that the planned modification of that agreement would render it materially less valuable to Freedom. (Compl. ¶¶ 28-31.)

Sure enough, after the closing of the APA, in fact within days after the closing, IHE used a combination of trickery and unfair business practices to push through a purported "amendment" to the IHE Agreement which was contrary to the deal referenced in the APA, and which was contrary to both the representations of Sellers, and the promises of Sellers to force IHE to accept the contract assignment without change. (Compl. ¶¶ 37-38.)

On January 22, 2008, IHE and Irwin Union Bank and Trust Company brought suit in the Northern District of California on the IHE Agreement – but neither IFC nor IMC was a party, and the APA formed no part of the allegations. (Compl. ¶ 13.) In response, Freedom sought to compel arbitration, and commenced an arbitration, as it was expressly entitled to do under the IHE Agreement. (Compl. ¶ 15; Compl. Ex. B, Correspondent Loan Purchase and Sale Agreement ("IHE Agreement") § 8.09.) IHE resisted going to arbitration by challenging whether the arbitration clause in the IHE Agreement was mandatory, but on April 30, 2008, the court in the Northern District of California agreed that the clause was mandatory and granted Freedom's motion to compel arbitration of all of the claims raised in that action.

Now, in the California Arbitration, IHE is attempting to enforce the IHE Agreement *as it was improperly modified* after the closing. In this Delaware Case, Freedom

does not seek to litigate the rights and obligations under the IHE Agreement as it was modified. (Compl. ¶¶ 60-73.)    Rather, in this Delaware Case, Freedom seeks two things: damages for Defendants' breaches of representations, warranties, and covenants under the APA, and specific performance of Section 9.1(g), which requires IFC and IMC to compel their affiliate, non-party IHE, to reform and revise the IHE Agreement so that it reads the same way as it did on the day of the APA sale transaction.    (Compl.   ¶¶ 62, 77-79.)    Alternatively, Freedom seeks an order compelling IFC to require its subsidiary to simply stop trying to enforce the IHE Agreement contrary to the deal contained in the APA.  (Compl. p.20 ¶ A(1).)

It should be clear from this explanation that this Delaware Case is not in any way the same dispute as that which is the subject of the California Arbitration.   The rights which Freedom asserts in this case arise from the APA, and IHE is not a party to the APA (or to this lawsuit).   IHE certainly is not itself bound by the requirements of Section 9.1(g) of the APA. But IFC and IMC are bound by that Section.   That is why those two entities (and no others) are being sued in this Delaware Case.

## II.     POINTS OF CLARIFICATION.

There are no fewer than eleven (11) incorrect statements in Seller's brief, and we correct them here.[1]   **Wrong Statement #1:** *"The truth is that the cases are mirror actions of each other."*  (D.I. 12, filed 4/23/2008, Defendants' Opening Brief In Support Of Their Motion To Dismiss, Stay, Or Transfer To The Northern District Of California ("IFC/IMC Brief") at 1.) In fact, the "cases" are not mirror actions.   For one thing, the "case" in California is now an arbitration.   For another thing, the California Arbitration is based upon the IHE Agreement,

---

[1]      These are representative examples.   We have not attempted to note each time that substantially the same incorrect statement is repeated.

while this Delaware Case is based upon the APA. The California Arbitration seeks to enforce the IHE Agreement as it is presently written. This Delaware Case takes no position about how *that* agreement should be enforced; rather, this Delaware Case seeks to require IFC and IMC to require their controlled subsidiary to ***reinstate*** the original contract or at least ***stop enforcing*** it as purportedly amended. Freedom seeks to do this irrespective of what the contract says at present. Accordingly, this Delaware Case is entirely different from the dispute in the California Arbitration.

      **Wrong Statement #2:** *"IHE and Irwin Union are clearly necessary parties as this action will attempt to litigate whether acts by those parties were improper."* (IFC/IMC Br. at 1.) There is a big difference between being a witness and being a party. Although it may be true that some witnesses from non-party IHE (but probably not from Irwin Union Bank and Trust Company ("Irwin Union") may be called to testify in this Delaware Case, it is undeniable that no relief is sought against IHE in this case, so it is not a necessary party.

      **Wrong Statement #3:** *"The Loan Purchase Agreement [i.e. the IHE Agreement] . . . arbitration was not mandatory."* (IFC/IMC Br. at 5 n.3). This statement was flatly rejected by the Court in the Northern District of California on April 28, when it held that the arbitration clause in the IHE Agreement was indeed mandatory – so mandatory that the Court compelled arbitration.

      **Wrong Statement #4:** *"Freedom's Arbitration Claim . . . contained a request that arbitration proceedings be stayed so that Freedom can obtain a resolution of its 'action in the U.S. District Court, District of Delaware . . . against parent Irwin Financial and IMC.' The arbitration panel granted that request."* (IFC/IMC Br. at 6 (insertion and record citation omitted).) Although it is quite correct that Freedom has asked that the Arbitration panel stay the

arbitration until this Delaware Case can be resolved, it is entirely false to state that "the arbitration panel granted that request." First, as counsel for Defendants well-knows, no "arbitration panel" has been appointed in that case yet. Second, the only thing that has happened in that arbitration is that because IHE refused to submit to the arbitration when it was commenced, Freedom was forced to ask the Northern District of California Court to compel arbitration, which that court has now done. The arbitration is accordingly proceeding, and will presumably take up the request to stay arbitration in due course. (*See* Declaration of John Crossman In Opposition To Defendants' Motion To Dismiss, Stay Or Transfer To The Northern District Of California ("Crossman Declaration"), filed contemporaneously herewith, at ¶ 2; Crossman Decl. Ex. B, Letter from Brock Peterson, Case Coordinator, National Arbitration Forum ("NAF"), to Zukerman Gore & Brandeis LLP and Buty & Curliano LLP, counsel to the parties in *Freedom Mortgage Corporation v. Irwin Home Equity Corporation & Irwin Union Band and Trust Company* (Apr. 28, 2008) (stating that NAF was only waiting for resolution of the motion to compel arbitration filed in the action in the Northern District of California).)

**Wrong Statement #5:** *"Freedom's maneuvering would instead require litigation in two separate courts (California and Delaware)."* (IFC/IMC Br. at 6 n.4.) This statement is incorrect because the only court where there will be litigation is this Court. The California Arbitration is necessarily separate, because the parties to **this** Delaware Case have not agreed to arbitration.

**Wrong Statement #6:** *"The substance of Freedom's claim, however, remains what performance is required under the Loan Purchase Agreement [IHE Agreement] – the very subject that is at issue in the California action."* (IFC/IMC Br. at 7.) This statement fundamentally misunderstands what this Delaware Case is about. As explained above,

performance that might be required under the IHE Agreement is irrelevant to this Delaware Case because this Delaware Case seeks to require that the parent company honor a different agreement – the APA – and force its subsidiary to change the IHE Agreement.

**Wrong Statement #7:** *"[T]he two actions are the same, which Freedom has conceded . . . ."* (IFC/IMC Br. at 11.) Freedom has conceded no such thing. Rather, Defendants have invoked what they call "logical extension of its arguments," but in fact what Defendants are proposing is that this Court accept a logical fallacy. Specifically, assuming that Freedom prevails in this Delaware Case, Defendants correctly note that, "resolution of the Delaware action would moot any claims that might arise in the arbitration" (*id.*), but this does not mean that the reverse is true. The reverse is not true. If, hypothetically speaking, the California Arbitration were to proceed before this Delaware Case, then **no matter what happens** in that arbitration, the issues in this Delaware Case would still need to be resolved because it is in this case – and nowhere else – that Freedom can address IFC and IMC's obligations to force their subsidiary IHE to stop what it is doing **irrespective** of whether IHE has the contractual legal right to do it or not. For this reason, this Delaware Case is paramount, and should proceed before the California Arbitration.

**Wrong Statement #8:** *"Freedom actually seeks relief from IHE ...."* (IFC/IMC Br. at 12 (original emphasis omitted).) This statement confuses the relief Freedom seeks in this Delaware Case and the ***effect*** of that relief if it is granted. Freedom seeks only an order against IFC and IMC. It is true that the order will, if granted, require Defendants to use their voting control over IHE to affect IHE's actions. But this is not the same as seeking relief against non-party IHE. Under any reading of the complaint in this Delaware Case, no resulting order of this Court would be directed at IHE. There is no relief sought against IHE.

- 8 -

**Wrong Statement #9:** *"Freedom cannot sue IFC, the shareholder, with the hope that this Court will compel IHE or Irwin Union, the corporation, to take action."* (IFC/IMC Br. at 13.) Freedom has not asked that this Court compel IHE or Irwin Union to do anything. And Freedom has no "hope" that this Court will do so.

**Wrong Statement #10:** *"Here, although Freedom purports to bring claims under the Assignment Agreement [sic – appears to refer to the APA, incorrectly named], the crux of its contentions, as is clear from the relief requested, centers upon the Loan Purchase Agreement [i.e., the IHE Agreement] ...."* (IFC/IMC Br. at 14.) In fact, "from the relief requested," it is clear that the crux – indeed, all – of Freedom's claims arise under the APA. For example, Freedom seeks specific performance of APA Section 9.1(g). Such a claim can only be brought pursuant to the contract which contains the obligation to be specifically performed – and that is the APA.

**Wrong Statement #11:** *"Freedom can assert the substance of the claims asserted in this action as compulsory counterclaims in the California action. Freedom can also assert cross-claims against IFC and IMC and seek to join these entities as parties in the California action."* (IFC/IMC Br. at 14 n.9.) Of course, Freedom cannot assert any claims against IFC or IMC in California. First, the **exclusive** choice of forum under the APA is Delaware. Second, Freedom has not agreed to arbitrate with IFC or IMC. Third, all the claims in California are now in arbitration. Accordingly, this assertion is simply wrong.

ARGUMENT

I.      THE CALIFORNIA DISPUTE ALREADY HAS BEEN
        SENT TO ARBITRATION.

        A.      Even If The Delaware And California Disputes
                Were The Same – And They Are Not The Same – It
                Is Already Too Late To Transfer This Case.

On Wednesday, April 30, 2008, in the United States District Court for the Northern District of California, Judge Phyllis Hamilton presiding, rejected all of the plaintiffs' arguments in that case, made by the same California lawyers representing the Defendants here, and ordered that dispute to be arbitrated:

> [T]his is a fairly easy decision to make. I mean, there is clearly an agreement. As I have indicated, I believe that the language does not permit the Court to read it permissively, as plaintiff's brief suggests. It's a dispute that is subject to arbitration; it should be arbitrated. I'm ordering it to be arbitrated immediately.

(Crossman Decl. Ex. A, Reporter's Transcript Of Proceedings, No. C08-472, at 14, lines 2-7 (N.D. Cal. Apr. 30, 2008), filed contemporaneously herewith.)

Accordingly, there is no longer any place to which to transfer this case, since the dispute in California is being arbitrated, and this Delaware Case cannot be arbitrated because the parties to the APA did not agree to arbitration of their disputes. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *accord In re Continental Airlines, Inc.*, 484 F.3d 173, 182 (3d Cir. 2007); *E.I. duPont de Nemours & Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 125-26 (D. Del. 2000). Moreover, as discussed in Point III, *infra*, this Delaware Case is entirely different from the California Arbitration, and therefore consolidation of the two disputes would not be appropriate even if it were possible.

- 10 -

B.    There Is No Judicial Economy In Transferring This Case, Since The California Dispute Is Already In Arbitration.

IFC and IMC's arguments for "judicial economy" fail entirely in the face of the California dispute having been ordered to arbitration.  As a result of Judge Hamilton's order of April 30, it is impossible to combine these two disputes, since one is arbitrable, and the other is not.  No matter where they are heard, they will remain separate and distinct.  And at this point, after the order of Judge Hamilton, there are no court proceedings ongoing in California at all.

Therefore, the most efficient thing – indeed, the only thing – to do is to deny the motion of IFC and IMC, and allow this case to proceed without further procedural wrangling.

II.    THIS DELAWARE CASE IS GOVERNED BY AN EXPRESS, WRITTEN CHOICE OF DELAWARE AS THE *EXCLUSIVE* FORUM FOR DISPUTES.

The contract between Freedom, IMC and IFC is the APA, and that contract provides emphatically, in CAPITAL LETTERS, that the exclusive forum to resolve disputes among these parties is the state and federal courts located in the State of Delaware:

THE PARTIES . . . AGREE THAT ANY ACTION OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE….

(APA § 11.7).

Exclusive choice of forum clauses are routinely enforced in this Circuit.  *See, e.g., Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 297-301 (3d Cir. 2001); *Crescent Int'l Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988); *Bbdova, LLC v. Auto. Techs., Inc.*, 358 F. Supp. 2d 387, 390-91 (D. Del. 2005); *RGC Int'l Investors, LDC v. ARI Network Servs., Inc.*, No. Civ. A. 03-003, 2003 WL 21843637, at *1-2 (D. Del. July 31, 2003).

- 11 -

This clause is the *only* such clause governing this Delaware Case, and it is very broadly written, covering as it does "any action or claim arising out of or relating to this agreement or the transactions contemplated hereby." (APA § 11.7.) IMC and IFC do not even attempt to dispute the fact that the instant dispute is covered by this clause.

Accordingly, since Delaware is the *only* proper forum for this dispute, it would be improper to grant Defendants' motion in any respect.

> A.    Defendants Have Not Satisfied Any Of The Recognized Grounds For Ignoring An Exclusive Choice Of Forum Clause.

The Third Circuit, following United States Supreme Court precedent, has repeatedly held that forum selection clauses will be enforced unless to do so would deprive a party of its day in court, or the clause was procured through fraud or overreaching:

> [F]orum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. A forum selection clause is unreasonable where the defendant can make a strong showing, either that the forum thus selected is so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court, or that the clause was procured through fraud or overreaching.

*Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991)(*citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15, 18 (1972)) (internal citations and quotations omitted).

It is equally well-settled that where a party seeks to avoid the effects of a forum selection clause, "the party objecting to enforcement of a forum selection clause has the burden of establishing the unreasonableness of such enforcement." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir.1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989); *accord, RGC Int'l*, 2003 WL 21843637, at *2; *Bbdova*, 358 F. Supp. 2d at 390.

- 12 -

IFC and IMC have not even attempted to satisfy this difficult burden.  Nowhere do they point to any evidence of fraud or overreaching, and their lack of reference to inconvenience is fatal to their burden to show that Delaware is "so gravely difficult and inconvenient that [IMC or IFC] will for all practical purposes be deprived of [their] day in court." *Foster*, 933 F.2d at 1219.  To the contrary, providing those two entities with "their day in court" is precisely what Freedom seeks in this Delaware Case.  And significantly, since the California Arbitration is inherently different from and not joinable with this dispute, this Delaware Court is for practical purposes still the only place where this "day in court" can be held.

> B. Where – As Here – The Choice Of Forum Clause Includes A Covenant Not To Challenge Venue, Defendants Are Barred From Doing So.

The operative choice of forum clause does not stop with the language quoted in Point A, *supra*.  No, it goes on – still in CAPITAL LETTERS – to provide express covenants by IFC and IMC that neither of them will ever bring an action concerning these transactions in any court other than in Delaware, and that neither IFC nor IMC will ever challenge the sufficiency of venue in the District of Delaware:

> THE PARTIES FURTHER: (a) AGREE NOT TO BRING ANY ACTION RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY IN ANY OTHER COURT (EXCEPT TO ENFORCE THE JUDGMENT OF SUCH COURTS)[AND] (b) AGREE NOT TO OBJECT TO VENUE IN SUCH COURTS OR TO CLAIM THAT SUCH FORUM IS INCONVENIENT….

(APA § 11.7.)

Accordingly, if IMC and IFC were correct in their assertion that the California dispute was "the same" as this Delaware Case, then both IMC and IFC would have breached the

above-quoted covenant of APA § 11.7 by filing suit *in California*.  However, as we explain in

Point III, *infra*, in fact IMC and IFC are not correct that these two disputes are the same.

Nevertheless, IMC and IFC have contrived to breach APA § 11.7 in a different

way:  they have objected to venue in this Court.  They have done this by motions under Fed. R.

Civ. P. 12(b)(3) (improper venue), and under 28 U.S.C. § 1406(a) (laying venue in the wrong

district).

Courts in this Circuit enforce agreements not to challenge venue.  *See, e.g., RGC

Int'l*, 2003 WL 21843637, at *1-2.  Given that the motion itself is a violation of Defendants'

obligations under the APA, this Court should not even consider such an application.  Defendants

have already waived the right to object.  Moreover, by filing a motion to transfer without

claiming that this Delaware action will cause them any inconvenience, or invoking 28 U.S.C. §

1404(a) ("Change of venue" for "the convenience of parties and witnesses"), Defendants

essentially concede that the APA bars them from doing so.

C.     Delaware Provides a More Convenient Forum Than
        Does California.

While the Court need not even address this issue, it bears pointing-out that if

relative convenience were evaluated in this case, the balance of convenience would tip decidedly

in favor of Delaware.  First, this is where the parties agreed that suit would be convenient.

Second, geographically speaking, Delaware is approximately equidistant from the home offices

of IFC and Freedom (the home office of IMC is irrelevant, since Freedom acquired substantially

all of its business).  By contrast, San Francisco, California, is very far from IFC, and twice as far

from Freedom.  The witnesses that would be involved in this case are scattered across the entire

country, so there is no single location which can lay claim to being most convenient on that

basis.  Furthermore, the APA is governed by Delaware law.  (APA § 11.12.)  Accordingly, it is

both more efficient and more accurate – and therefore more convenient – to have the law found

and interpreted by the court with the greatest familiarity with that law.

    In short, there is no reason to find that Delaware is less convenient, and it would

certainly be wrong to find that it is so inconvenient that it would deprive IMC or IFC of their

"day in court."

    III.  BECAUSE THE DISPUTE IN THE CALIFORNIA ARBITRATION IS NOT "MATERIALLY ON ALL FOURS" WITH THE DISPUTE IN THIS DELAWARE CASE, THE FIRST-FILED RULE DOES *NOT* APPLY.

    Defendants have failed to demonstrate the two basic kinds of ***sameness***, both of

which are necessary before one can invoke the first-filed rule:  As case after case in the Third

Circuit has held, the "first-filed rule" requires that the two proceedings must involve "the ***same***

parties and the ***same*** issues already before another district court."  *EEOC v. Univ. of Pa.*, 850

F.2d 969, 971 (3d. Cir. 1988) (emphasis added) (internal quotations and citations omitted); *see

also Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 927 (3d Cir. 1941); *Thales Airborne Sys.

S.A. v. Univ. Avionics Sys. Corp.*, No. Civ. 05-853, 2006 WL 1749399, at *3 (D. Del. June 21,

2006); *Airport Investors Ltd. P'ship v. Neatrour*, No. Civ. A. 03-831, 2004 WL 225060, at *2

(D. Del. Feb. 3, 2004); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 396

(D. Del. 2002).

    The Third Circuit has recently emphasized that this requirement means that the

supposed "second" action must be "truly duplicative" of the first one.  *Grider v. Keystone Health

Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007); *accord Complaint of Bankers Trust Co. v.

Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980).  And the Third Circuit has further explained that

"truly duplicative" means that the supposed "second" suit "**must be materially on all fours with

the other**....  [T]he issues must have such an identity that a determination in one action leaves

little or nothing to be determined in the other." *Grider*, 500 F.3d at 333 n.6 (internal quotations and citations omitted).

Moreover, caselaw from the Third Circuit and this Court squarely contradicts Defendants' suggestion that the first-filed rule can be applied where two cases simply share "subject matter" or "common matters" (IFC/IMC Br. at 8, 9), where they are about the same "subject" (IFC/IMC Br. at 8, 10), or where there is "substantial overlap of the issues" (IFC/IMC Br. at 10) between them – including cases upon which Defendants themselves rely. *See, e.g., EEOC*, 850 F.2d at 971 (first-filed rule applies where "the same parties and the same issues [are] already before another district court"); *APV N. Am.*, 295 F. Supp. 2d at 397 (declining to adopt the "substantial overlap" test). Defendants are incorrect to suggest, as they do, that "[t]he first-filed rule does not hinge on the identity of the parties or issues but rather on 'which court first obtains possession of the subject of the dispute ....'" (IFC/IMC Br. at 9.)[2] *See, e.g., Grider*, 500

---

[2]    *Advanta Corporation v. Visa USA, Inc.*, No. Civ. A. 96-7940, 1997 WL 88906, at *2 (E.D. Pa. Feb. 19, 1997), cited in defendants' Brief in Support, is not to the contrary. Arguably, *Advanta* overstates the holding of *EEOC*. *EEOC* specifically holds that the first-filed rule applies to "proceedings involving the same parties and the same issues ...." *EEOC*, 850 F.2d at 971. *EEOC* does not suggest that this "same parties same issues" test is invalid. It is true that *Advanta*, in citing *EEOC*, also comments that it makes a difference which court first has possession of "the subject matter," but read as a whole, it is clear that *EEOC* stands for the proposition that in determining "the subject matter," the central inquiry which normally determines application of the first-filed rule is the presence of the same parties and issues. *See id.* The *Advanta* decision does not change this general rule, but merely addresses a fairly unique situation where one defendant who could be sued in the first action gets wind of it and tries to forum shop elsewhere. The *Advanta* court expressly held that the second suit plaintiff could in fact raise all of its claims as counterclaims in the first suit. *Advanta*, 1997 WL 88906, at *3. By contrast, in our case, because of the arbitration clause and the forum provision, it would not be possible to raise Freedom's claims as counterclaims in the California Arbitration (at least not without requiring Freedom to abandon important rights under the APA). *Advanta* did not face the issue of exclusive forum provisions requiring suit in Delaware or of arbitration provisions which would divest parties of the right to a jury trial. Those issues prevent even the possibility of a transfer here, and even if the suits were similar (which they are not) these facts would constitute the kind of appropriate circumstances that *EEOC* expressly holds may prevent a transfer. *EEOC*, 850 F.2d at (Continued . . .)

F.3d at 333 n.6 (requiring that the issues in the two actions "must have such an identity that a determination in one action leaves little or nothing to be determined in the other").

Any determination of the California Arbitration, no matter what the result, would have zero effect upon this Delaware Case. If IHE loses the arbitration, Freedom will still have substantial claims under the APA against IFC and IMC, including claims for indemnification, breach of representations, and breach of duty to buy back loans. None of those claims can be decided in the Arbitration. Conversely, even if IHE wins the arbitration, Freedom in this Delaware Case would still have not only the above-mentioned claims, but also its claim that IFE and IMC are contractually obligated to force IHE not to demand performance under the IHE Agreement as amended post-closing.

Accordingly, it is absolutely clear that the California Arbitration has no identity with the issues in dispute in this case, and as a result, the "first-filed" rule does not apply. *See, e.g., APV N. Am.*, 295 F. Supp. 2d at 397-98 (denying motion to dismiss under first-filed rule where two actions involved related technology but the second action embraced "facts not involved in the [first-filed action]"); *Cisco Sys. v. GPNE Corp.*, Civ. No. 07-671, 2008 WL 1758866, at *2-3 (D. Del. Apr. 17, 2008) (denying motion to transfer pursuant to first-filed rule where "neither the parties nor the patents at issue are identical").

---

(. . . continued)

      972. *Advanta* itself recognizes that circumstances may create an exception to transfer. *Advanta*, 1997 WL 88906, at *3. And the *Advanta* court was a decade too early to have the benefit of the Third Circuit's "materially on all fours" analysis in *Grider,* cited *supra.*

- 17 -

CONCLUSION

For all of the foregoing reasons, Defendants' motion should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ William M. Lafferty*

William M. Lafferty (#2755)
Theodore A. Kittila (#3963)
Karl G. Randall (#5054)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
wlafferty@mnat.com
  *Attorneys for Plaintiff*
  *Freedom Mortgage Corporation*

OF COUNSEL:

John K. Crossman
ZUKERMAN GORE & BRANDEIS, LLP
875 Third Avenue
New York, New York 10022
(212) 223-6700

May 23, 2008
2339711.4

- 18 -