IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FREEDOM MORTGAGE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-146-GMS |
| | ) | |
| IRWIN FINANCIAL CORPORATION and | ) | **JURY DEMAND** |
| IRWIN MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF JOHN K. CROSSMAN IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
William M. Lafferty (#2755)
Theodore A. Kittila (#3963)
Karl G. Randall (#5054)
1201 N. Market Street
Wilmington, Delaware 19801
(302) 658-9200
wlafferty@mnat.com
  *Attorneys for Plaintiff*
  *Freedom Mortgage Corporation*

OF COUNSEL:

John K. Crossman
ZUKERMAN GORE & BRANDEIS, LLP
875 Third Avenue
New York, New York 10022
(212) 223-6700

May 23, 2008

I, John K. Crossman, declare:

1.       I am a partner of the law firm Zukerman Gore & Brandeis, LLP, counsel for Plaintiff Freedom Mortgage Corporation.  I make this declaration in opposition to Defendants' Motion To Dismiss, Stay or Transfer to the Northern District of California.  I have personal knowledge of the facts set forth herein, and if called to testify, could and would testify competently thereto.

2.       Attached as Exhibit A is a true and correct copy of the transcript of proceedings before United States District Judge Phyllis Hamilton for the Northern District of California on Wednesday, April 28, 2008, in the action *Irwin Union Bank and Trust Co. & Irwin Home Equity Corp. v. Freedom Mortgage Corp.*, 3:08-CV-472 (PJH), filed on January 22, 2008.  During those proceedings, Judge Hamilton ordered that all claims raised in that action be arbitrated.

3.       Attached as Exhibit B is a true and correct copy of a letter from the National Arbitration Forum, dated April 28, 2008, to counsel for Claimant Freedom Mortgage Corporation and Respondents Irwin Union Bank and Trust Company and Irwin Home Equity Corporation in NAF Arbitration No. MX0803002058323.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 23rd day of May 2008 in New York, New York.

_____
John K. Crossman

**EXHIBIT A**

Pages 1 - 16

United States District Court

Northern District of California

Before The Honorable Phyllis J. Hamilton

Irwin Union Bank and )
Trust Company, et al. )
                    )
        Plaintiff, )
                    )
  vs. )           No. C08-472 PJH
                    )
Freedom Mortgage )
Corporation, )
                    )
        Defendant. )
_____)

San Francisco, California
Wednesday, April 30, 2008

Reporter's Transcript Of Proceedings

**Appearances**:

For Plaintiff:       Wilson, Sonsini, Goodrich & Rosati
                  650 Page Mill Road
                  Palo Alto, California  94304-1050
        By: **David J. Berger, Esquire**
            **Jenny Dixon, Esquire**

                  Zukeman Gore & Brandeis LLP
                  875 Third Avenue, 28th Floor
                  New York, NY  10022
        By: **John K. Crossman, Esquire**

For Defendant:      Buty & Curliano LLP
                  555 12th Street, Suite 1280
                  Oakland, California  94607
        By: **Jason Curliano, Esquire**

*Reported By:*       *Sahar McVickar, RPR, CSR No. 12963*
                  *Official Reporter, U.S. District Court*
                  *For the Northern District of California*

(Computerized Transcription By Eclipse)

```
 1   Wednesday, April 30, 2008                      9:00 a.m.
 2                    P R O C E E D I N G S
 3           THE CLERK:  Civil case number 08-472, Irwin Union
 4   Bank and Trust, et al., versus Freedom Mortgage Corporation.
 5           Counsel, appearances.
 6           MR. BERGER:  Good morning, Your Honor.
 7           David Berger from Wilson, Sonsini, Goodrich &
 8   Rosati, for Irwin.
 9           With me is my colleague, Jenny Dixon.
10           MR. CROSSMAN:  Good morning, Your Honor.
11           John Crossman from Zukeman, Gore & Brandeis in
12   New York, appearing pro hac vice.
13           And, thank you for granting that request.  And with
14   me is Jason Curliano from this Bar.
15           MR. CURLIANO:  Good morning, Your Honor.
16           THE COURT:  All right, this matter is on for a
17   hearing on defendant's motion to compel -- well, motion to
18   dismiss and/or stay and/or compel arbitration, I'm not exactly
19   sure.  We can get right to the heart of this -- of the issue.
20           I don't -- I've read all your papers; I don't need
21   to hear a lot of argument about whether or not this is an
22   appropriate case to arbitrate.  This is no dispute that there
23   is a valid arbitration agreement.  There is no dispute that the
24   dispute is encompassed within that agreement.
25           There is dispute as to whether or not the agreement
```

1   is mandatory or permissive agreement.  I'll -- my tentative

2   ruling on that is that it is mandatory.  All of the cases that

3   have been cited, and that we've been able to find say that

4   "may," the use of the word "may" in such a provision, i,s,

5   nonetheless, a mandatory provision.  California Courts of

6   Appeals have also found that.

7           But, notwithstanding that, I'm kind of at a loss as

8   to what it is that the defendant wants in this case and what it

9   is you think that you are entitled to.  So, what I'd like,

10  since this is the defendant's motion, I'd like for you to

11  explain.

12          Now, as I understand it, your client, Freedom

13  Mortgage, filed a request for arbitration with the National

14  Arbitration Forum.

15          *MR. CROSSMAN:*  Yes, Your Honor we did.

16          *THE COURT:*  Asked the Arbitration Forum to stay

17  arbitration of this exact dispute, correct?

18          *MR. CROSSMAN:*  Correct, Your Honor.

19          *THE COURT:*  The National Arbitration Forum stayed

20  arbitration.

21          *MR. CROSSMAN:*  Not exactly, Your Honor.  There's

22  been some, I think, frankly, just an honest mistake on the part

23  of my adversary about what exactly happened.

24          The National Arbitration Forum, we told them that we

25  had a motion -- that there was a court proceeding filed already

1    before Your Honor -- and that we had made a motion to stay or

2    dismiss that court proceeding and to commence the arbitration.

3    And, so as far as this Court proceeding is concerned, we simply

4    told National Arbitration Forum about this proceeding, and

5    they, automatically, without any arbitrator having been

6    appointed, said, fine, we'll wait and see what happens in the

7    Northern District of California.

8            Now, the point of confusion, where I think the

9    mistake was made, is that we have also, Freedom Mortgage, that

10   is, has commenced a different lawsuit based on an entirely

11   different contract against two different parties, neither of

12   which is a party to this action in Delaware, which has to do

13   with a very large acquisition that was done by my client from a

14   company which is a parent, an ultimate parent of the parties

15   that are before Your Honor.  And, we believe that that

16   proceeding in Delaware will, in the end, cause the parent

17   company of the parties that are before Your Honor to tell its

18   subsidiary, that it wholly owns and controls, to drop this

19   matter.

20           So, you have a situation where the parents are

21   fighting on the East Coast and the children, if I can use that

22   expression, are fighting on West Coast.  And, our view is if

23   you are going to have those two fights, since the parent does

24   control the subsidiary of Irwin, and, if we are right in

25   Delaware, that the parent has a contract which specifically

1    obligates it to control its subsidiary in this fashion, it's

2    not like we made up some -- you know, there is a specific

3    contractual provision in the Delaware proceeding which entitles

4    us to require that parent to basically tell the subsidiary to

5    lay off.

6          So, our request to the panel of the arbitrators is,

7    look, if that's the case, if that's what we're fighting over in

8    Delaware, doesn't it make sense to get that question answered

9    fist?  Because otherwise, if the arbitration goes to

10   completion, you have a dispute over this relatively small

11   contract compared to the big one that is being litigated in

12   Delaware.  And, you could, at least theoretically, end up with

13   a result where the arbitrators would make a ruling of, well,

14   this is how the contract shakes out only to find that the

15   Delaware Court agrees with us that we are entitled to have the

16   parent company stop the enforcement of this contract.

17          *THE COURT:*  So your goal is to have the Delaware

18   case go forward first.

19          *MR. CROSSMAN:*  We think that makes the most sense.

20          *THE COURT:*  Wasn't there a request filed in the

21   Delaware court to have that case transferred to this Court?

22          *MR. CROSSMAN:*  Absolutely.  They did that last week.

23   Not us, we didn't do it.

24          *THE COURT:*  Okay.  I'm just really confused.

25          You file a request, your client files a request for

1    arbitration, the arbitration is stayed pending --

2             **MR. CROSSMAN:**  Well, I think --

3              **THE COURT:**  Let's just use that not as a term of

4    art.

5             **MR. CROSSMAN:**  Okay.

6             **THE COURT:**  The arbitration is not going forward

7    pending developments in the Delaware case.

8             **MR. CROSSMAN:**  No.  I'm sorry, I don't mean to

9    interrupt, Your Honor, but that is where this misunderstanding

10   is.

11            **THE COURT:**  Well, that's what the latest filing by

12   plaintiff's counseling says.

13            **MR. CROSSMAN:**  I know.  And they are just mistaken

14   about it.  It's not that hard to make this mistake.  Let me

15   explain why.

16            We did ask that, once the arbitrator is appointed in

17   that arbitration, that they take up the question of sequencing

18   whether the arbitration should go before, after, or at the same

19   time as the Delaware action.  But, no arbitrator has been

20   appointed.  That application has not been heard.  Nothing has

21   been done on it at all.

22            However, because there is a dispute about whether

23   the dispute that's before Your Honor is arbitrable, and now we

24   are talking about the case that is right here in the Northern

25   District of California, we are not talking about the Delaware

1    action, because of that, the National Arbitration Forum said,

2    okay, we'll wait.  We are not going to do anything until we

3    find out if the Court is going to send us to arbitration or

4    not.

5                *THE COURT:*  So --

6                *MR. CROSSMAN:*  If I could just say one other thing,

7    Your Honor?

8                To make absolutely sure that this was correct, I

9    called National Arbitration Forum the day after I got the brief

10   from my counsel in Delaware that said what Your Honor said,

11   and, I said to the case administrator, because there is no

12   arbitrator, I said didn't you guys just decide what you were

13   doing because you wanted to find out if the case was going to

14   have arbitration compelled in the Northern District of

15   California?  And, he said, yes, absolutely.  I said, well, the

16   letter that you sent out, the National Arbitration

17   administrative sent out, doesn't actually identify the case

18   name that they are talking about.

19               So I said, well, would you please just send a letter

20   to everyone that actually specifically identifies the case you

21   are waiting for before you proceed so that everyone understands

22   what is going on here?  And he said, sure, no problem, just

23   send me an E-mail confirming that is what you want to do.  So I

24   did that.

25               And then, what is today, Wednesday?  I think it was

1    Monday that we got a letter by E-mail just like that, which I

2    understand that counsel received also, although, when I got the

3    letter from National Arbitration Forum, I said, I don't see a

4    cc to my opposing counsel, did you send it to him? He says,

5    yes, they got it, too. So, National Arbitration Forum told me

6    that they have clarified this, that they have not -- they

7    haven't appointed an arbitrator, haven't ruled on our

8    substantive motion regarding the sequencing of the two coastal

9    disputes, but they are waiting to hear what Your Honor wants to

10   do with this current motion to stay or to dismiss.

11            **THE COURT:** Assuming I were to order arbitration --

12            **MR. CROSSMAN:** Yes.

13            **THE COURT:** -- are you going to seek a stay of that

14   -- well, I'm not exactly sure what you are asking for here.

15   You ask in the alternative for me to decide the underlying

16   case, if I compel arbitration, or to stay the underlying case,

17   pending arbitration.

18            I'm a little unclear about how I stay arbitration

19   here, or stay the case pending arbitration, if the arbitrable

20   forum is staying or withholding action on the exact same

21   arbitration.

22            **MR. CROSSMAN:** I think I can clarify that. And I

23   understand that it's confusing because these same words get

24   used in different contexts. But, the way it works is: Your

25   Honor, as I understand the law, is charged with making a very

```
1   clear decision, which you alluded to at the beginning of Your
2   Honor's remarks, which is is there an arbitration agreement and
3   does this fall within it?  And if so, based on our request to
4   compel arbitration, Your Honor ought, then, to compel
5   arbitration.  Once that's been done, and we report that to the
6   National Arbitration Forum, they will proceed.  That's all they
7   are waiting for, is confirmation that Your Honor is not going
8   to say, for some reason they don't comprehend at the National
9   Arbitration Forum, that this can't be arbitrated.  So that's
10  all they are waiting for.
11          At that point, what I would expect to happen is that
12  the normal process of appointing an arbitrator would occur.
13  And then, we would go to that arbitrator and have a conference
14  and we would say what is going to happen in this arbitration?
15  And we would say, well, there is this case in Delaware, and we
16  think that should really be resolved first.  And my adversary
17  will say whatever they say --
18          THE COURT:  Is the Delaware case subject to
19  arbitration?
20          MR. CROSSMAN:  No, no.  There is no arbitration
21  clause.  It's different parties.  And it's a Delaware
22  Litigation Forum Selection, in capital letters.  So, I don't
23  actually think that that's going to happen, although Your Honor
24  is aware that our adversary has asked not only that there not
25  be arbitration, but that the entire Delaware proceeding, which
```

1    is a more substantial case, frankly, be transferred to Your

2    Honor.  And that, to me, is just one more reason why we need to

3    get the motion that is before Your Honor resolved, clearly,

4    because we don't want cases being transferred to Your Honor,

5    after arbitration has started, when Your Honor thinks that

6    you're done with this thing.  Then, it's going to be chaos.

7            I don't actually think they can transfer that one

8    because the forum selection is so clear, but I bring it up as a

9    possibility.

10           Have I clarified anything, Your Honor, at all?

11           *THE COURT:*  Yeah.  Yeah.  Okay.

12           All right, Mr. Berger?

13           *MR. CROSSMAN:*  Thank you, Your Honor.

14           *MR. BERGER:*  Your Honor, a couple of things, first

15   in response to the most recent questions.

16           There is no question that my colleague on the other

17   side is trying to stay the arbitration in the National

18   Arbitration Forum.  In their application for arbitration, they

19   state in paragraph 10 that "At the outset of this

20   arbitration" -- this is a document that is attached at

21   Ms. Dixon's declaration at Exhibit 2 -- they state that, "At

22   the outset of this arbitration, Freedom will request that the

23   panel abstain from conducting further proceedings until the

24   injunction action is resolved."  And, the injunction action is

25   what they are shorthand referring to as the Delaware action,

1    okay?

2            And then, they say, they go on, "The outcome of the

3    injunction action should result in the dismissal of this

4    proceeding." And that is at paragraph 10, page 4 of Exhibit 2

5    to Ms. Dixon's declaration.

6            **THE COURT:**  Okay.

7            **MR. BERGER:**  What is happening here is really sui

8    generis, Your Honor.  What we have are two litigations that

9    cover essentially the same issues.  The issues in the case are

10   Irwin -- one of the Irwin entities, Irwin Financial Corporation

11   -- sold another Irwin entity to Freedom.  As part of that sale,

12   Freedom assumed liabilities of a basic contract that Irwin

13   entity had with these two Irwin entities that are before Your

14   Honor in this case.

15           There is now a dispute over what should happen with

16   respect to that contract that Freedom assumed, all right?  And

17   that is, frankly, the dispute that is occurring in Delaware as

18   well as the dispute that's occurring here.

19           What -- we filed originally the case that just

20   covered the dispute over these, these particular contracts, and

21   Freedom is now trying to expand that and go to a broader issue

22   and try and sort of run -- run an end-run, and file a --

23   essentially choose a different forum and prefers to litigate

24   this case in Delaware.

25           We frankly don't care where this case is litigated.

1    We believe that this is the appropriate forum for the reasons

2    set forth in our papers.  What we think doesn't make any sense,

3    Your Honor, is to have multiple cases going on in multiple

4    forums.  What we do think is the issues in this case have to be

5    resolved, all right?  We think that, frankly, the Delaware

6    litigation doesn't make a lot of sense for whole other reasons,

7    and we filed our papers to dismiss in that case, but we also

8    believe that they ought to be all consolidated in one court.

9           In the old days, when I first started practicing,

10   what I remember happening is that the judges would call each

11   other and say, you want to have it or you want me to have it,

12   and that cases would be decided sometimes that way, you know,

13   or they would be multi-districting transferred.  Here, we've

14   only got two cases, that doesn't make sense.

15          But, it really seems to us that the authorities that

16   are cited in -- in everybody's papers really don't apply here,

17   because, here, what we have got is a sui generis situation

18   where the arbitration clause is not where people are trying to

19   -- face it up against another fundamental issue with respect to

20   judicial economy.

21          And, the reasons that the courts historically have

22   been so strong behind the Federal Arbitration Act and in favor

23   of arbitration is to allow judicial economy and allow parties

24   to settle disputes in different ways.

25          Here, what we've got is a situation where the

1    arbitration, ironically enough, that Freedom is anxious to get

2    into, they are also trying to stay.  And so, we are not going

3    to face any issues of judicial economy, all we are going to

4    face is a separate litigation in Delaware which is going to

5    resolve the exact same issues in some ways.  And, we are going

6    to face competing litigations cross-country.  And I just don't

7    see the sense in that.

8            *THE COURT:*  Okay.

9            All right, anything else?

10           *MR. BERGER:*  No, Your Honor.

11           *THE COURT:*  All right, anything else?

12           *MR. CROSSMAN:*  I don't know if I made this clear,

13   but, although these are interesting issues, Your Honor, I think

14   that the question of whether the arbitration or the Delaware

15   action should proceed in tandem, separately, in one place or

16   not, is really, with all due respect, not before Your Honor.

17   The question here is just arbitrate or not, and then, my very

18   skilled counsel adversary can bring up either in Delaware, or

19   in arbitration, all these arguments and we can figure out how

20   to proceed.

21           Thank you.

22           *THE COURT:*  All right.

23           Well, I certainly tend to agree with that.  You all

24   are concerned, obviously, about the interest of your respective

25   clients; I'm concerned about my own docket.  And, while it's

```
1    not my practice to call judges in other districts and decide
2    who is going to keep what case, this is a fairly easy decision
3    to make.  I mean, there is clearly an agreement.  As I have
4    indicated, I believe that the language does not permit the
5    Court to read it permissively, as plaintiff's brief suggests.
6    It's a dispute that is subject to arbitration; it should be
7    arbitrated.  I'm ordering it to be arbitrated immediately.
8            I will not, however, dismiss the case in lieu of
9    arbitration.  It will be stayed on my docket until the
10   arbitration is completed.  And frankly, I don't really care
11   about the sequencing of it, that is something you all are going
12   to have to work out.  I'm sure your clients aren't interested
13   in paying a lot of money to fight the same issues in three
14   different locations.  And I'll simply tell you, if you are
15   successful on getting the Delaware case transferred here, I'm
16   going to stay it.  The case has to be arbitrated first.  I'm
17   not going to look at this case until after it's arbitrated.
18           And even though that involves different parties, I'm
19   not going to hear the Delaware case until after the case that
20   is filed first, which is the case on my docket, has been
21   arbitrated.  So the motion to compel arbitration is granted,
22   and the motion to dismiss is denied, okay?
23           MR. CROSSMAN:  Thank you, Your Honor.
24           THE COURT:  You're welcome.
25                   (Proceedings adjourned at 9:53 a.m.)
```

---o0o---

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing. The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

<u>/s/ Sahar McVickar</u>

Sahar McVickar, RPR, CSR No. 12963

Sunday May 15, 2008

**EXHIBIT B**



NATIONAL ARBITRATION
**FORUM**.

April 28, 2008

Zukerman Gore & Brandeis LLP
John K. Crossman & Frank C. Welzer
875 Third Ave
New York, NY 10022
VIA EMAIL

Buty & Curliano LLP
Jason J. Curliano
383-4th St
Third Floor
Oakland, CA 94607
VIA EMAIL

**RE: Freedom Mortgage Corporation v Irwin Home Equity Corporation & Irwin Union
Bank and Trust Company
File Number: MX0803002058323**

Dear Parties:

The National Arbitration Forum is in receipt of the Claimant's submission received on April 24,
2008 for the above referenced matter requesting clarification of the Forum's letter dated April
15, 2008.

The Forum previously received of a Notice from the Claimant stating that a court action has been
filed in this matter in the United State District Court, Northern District of California, Oakland
Division, entitled Irwin Union Bank and Trust Company and Irwin Home Equity Corporation v
Freedom Mortgage Corporation, Case No. C08-00472 PJH.

Pursuant to Rule 9F(2) of the Code of Procedure, the above case is now Stayed with the Forum
pending the resolution of the court action.

The Parties are directed to keep the Forum apprised of the outcome of the court action.

All documents submitted by the Parties including this submission will be forwarded to the
Arbitrator for review and consideration at the Hearing.

All future correspondence received from the Parties regarding this matter will also be forwarded
to the Arbitrator for review at the Hearing.

The Parties are reminded that all correspondence submitted to the Forum must also be delivered to all Parties in accord with Code of Procedure Rule 6D.

Sincerely,

Brock Peterson
Case Coordinator
1-800-474-2371 x6614
1-866-695-1907