**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

FREEDOM MORTGAGE CORPORATION,

Plaintiff,

v.

IRWIN FINANCIAL CORPORATION, and
IRWIN MORTGAGE CORPORATION,

Defendants.

C.A. NO. 08-146-GMS

**DEFENDANTS' REPLY BRIEF IN SUPPORT**
**OF THEIR MOTION TO DISMISS, STAY OR TRANSFER**
**TO THE NORTHERN DISTRICT OF CALIFORNIA**

Raymond J. DiCamillo (#3188)
dicamillo@rlf.com
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendants*

OF COUNSEL:

David J. Berger
Wilson Sonsini Goodrich & Rosati, PC
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300

Meredith E. Kotler
Joshua A. Plaut
Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 39th Floor
New York, New York 10019
(212) 999-5800

Dated: June 13, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

I. THIS ACTION DUPLICATES THE FIRST-FILED CALIFORNIA ACTION ..... 3

II. THE FIRST-FILED RULE BARS THIS ACTION ..... 5

- A. This Action and the Arbitration Are "Materially on All Fours" ..... 5
- B. The Purposes of the First-Filed Rule Are Well Served Here ..... 6
- C. Freedom's Other Arguments Against Application of the First-Filed Rule Fail ..... 7

III. FREEDOM'S CLAIMS ARE SUBJECT TO ARBITRATION ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

## CASES

Page

*Advanta Corp. v. Visa U.S.A., Inc.*,
No. 96-7940, 1997 WL 88906 (E.D. Pa. Feb. 19, 1997) ....... 6

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
295 F. Supp. 2d 393 (D. Del. 2002) ....... 6

*Battaglia v. McKendry*,
233 F.3d 720 (3d Cir. 2000) ....... 10

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925 (3d Cir. 1941) ....... 5

*E.E.O.C. v. Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988),
*a'ffd*, 493 U.S. 182 (1990) ....... 5, 6

*Grider v. Keystone Health Plan Cent., Inc.*,
500 F.3d 322 (3d Cir. 2007) ....... 5, 6

*In re NBR Antitrust Litig.*,
207 Fed. Appx. 166 (3d Cir. 2006) ....... 8

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) ....... 8

*Kerr-McGee Chem., LLC v. Kimera Pigments Oy*,
No. *03-191*-03-GMS, 2003 WL 22299045 (D. Del. Oct. 7, 2003) ....... 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ....... 10

*RJF Holdings III, Inc. v. Refractec, Inc.*,
No. 03-1600, 2003 WL 22794987 (E.D. Pa. Nov. 24, 2003) ....... 6

*Sandvik AB v. Advent Int'l. Corp.*,
220 F.3d 99 (3d Cir. 2000) ....... 10

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
543 F. Supp. 2d 404 (E.D. Pa. 2008) ....... 6

*Time Warner Cable, Inc. v. GPNE Corp.*,
497 F. Supp. 2d 584 (D. Del. 2007) ....... 5, 6

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
520 F. Supp. 2d 579 (D. Del. 2007) ....... 6

*Todd Shipyards Corp. v. Cunard Line Ltd.*,
708 F. Supp. 1440 (D.N.J. 1989) ....... 7

## PRELIMINARY STATEMENT

This action focuses on the same issue as an earlier-filed California lawsuit (the "California Action"): whether or not Freedom is required to repurchase approximately $8 million of defective loans that it sold to IHE.[1] Defendants' motion to dismiss, transfer, or stay this case should be granted. Freedom's Opposition ("Opp.") advances no valid argument against application of the first-filed rule.

In January 2008, IHE sued Freedom in the Northern District of California to enforce the terms of a Loan Purchase Agreement that was assigned to Freedom as part of an Asset Purchase Agreement between Defendants and Freedom. Under the Loan Purchase Agreement as amended by an Addendum, Freedom is required to repurchase the defective loans that it sold IHE. The California court recently denied Freedom's motion to dismiss, but granted its motion to compel arbitration under the Loan Purchase Agreement's arbitration clause (the "Arbitration"). In the Arbitration, Freedom seeks to defend against its repurchase obligations based on defenses of fraud and duress. Specifically, in an arbitration claim filed by Freedom on March 12, 2008, Freedom claims that unnamed persons at IHE and IMC conspired to effect a "bait and switch" by secretly agreeing to amend the Loan Purchase Agreement through the Addendum, in a manner that would be harmful to Freedom; after the Loan Purchase Agreement was assigned to Freedom, Freedom contends, unnamed persons at IHE then forced Freedom to sign the Addendum by threatening to refuse to purchase additional loans or return Freedom's underlying loan documents so that Freedom could sell its loans elsewhere.

These allegations should sound familiar, *because they are the very same ones included in Freedom's instant complaint also filed in this Court on March 12, 2008.* Here, Freedom again claims that it was the victim of this "bait and switch" and was forced to sign the Addendum under duress. Freedom asks this Court for the same relief it seeks in the Arbitration: for a ruling that the Addendum is void and that IHE cannot compel Freedom to repurchase the defective loans, and for damages of approximately $8 million – the very same amount of loans IHE wants

[1] This reply memorandum adopts defined terms used in Defendants' opening brief.

Freedom to repurchase. Apparently, Freedom filed this duplicative action here hoping this Court would preempt the California Action and Arbitration and rule on Freedom's defenses first.[2]

The first-filed rule forecloses such maneuvering, and this Court should not countenance it. Freedom's fraud and duress defenses must be litigated with IHE's first-filed claims for repurchase under the Loan Purchase Agreement. Freedom's defenses cannot be litigated in a duplicative suit here, doubling the burden on the courts, doubling the cost to the Irwin entities, and giving rise to the possibility of inconsistent rulings on the same facts and issues.

Freedom's Opposition seeks to avoid the first-filed rule by insisting that its claims before this Court involve different agreements and different facts than the California Action and Arbitration. That is demonstrably false. Indeed, *every single allegation in Freedom's arbitration claim is included in its complaint here*. *See* Attachment 1. Although Freedom emphasizes that its claims here allege breaches of the Asset Purchase Agreement, Freedom's arbitration claim cites the very same representations and covenants of the Asset Purchase Agreement. Moreover, the gravamen of Freedom's Asset Purchase Agreement claims here – and the predicates for them – are the Loan Purchase Agreement, the Addendum, and the circumstances surrounding Freedom's execution of the Addendum. Freedom has no claims here but for the alleged fraud pertaining to the amended Loan Purchase Agreement.

Freedom is also wrong that this action concerns different parties than the California Action and Arbitration. In its arbitration claim, Freedom named IHE and its sister company, Irwin Union; here, Freedom named IFC and IMC as defendants. But because Freedom's allegations here and in the Arbitration are identical, Freedom's complaint is rife with allegations about IHE's alleged fraudulent conduct. Freedom cannot defeat application of the first-filed rule simply by leaving IHE out of the caption here – particularly when IHE is so central to the rest of

---

[2] Defendants vigorously deny Freedom's allegations. Defendants intend to file a separate motion to dismiss or for summary judgment under Fed. R. Civ. P. 12(c) and 56. The grounds for that motion include failure to state a claim upon which relief can be granted and failure to allege fraud with particularity. Should the Court direct, Defendants are prepared to move immediately. Defendants have thus far refrained from raising these substantive issues to avoid further burdening the Court in a duplicative case that should never have been filed here.

Freedom's complaint. In any event, Freedom wrongly insists that the first-filed rule requires absolute identity of parties. Freedom's remaining litany of arguments against application of the first-filed rule similarly fails.

Freedom's complaint should be dismissed, transferred, or stayed for an additional and separate reason. Freedom's allegations – an alleged fraud to amend the Loan Purchase Agreement and duress to secure Freedom's execution of the Addendum – are the very type of fraud claims that fall within the ambit of a broad arbitration provision such as that found in the Loan Purchase Agreement and incorporated in the Addendum. Now that Freedom has compelled arbitration of IHE's repurchase claims under the Loan Purchase Agreement's arbitration clause, so too Freedom's allegations are subject to that clause. Freedom's allegations should not be heard for a second time here, requiring double the work and creating the possibility of inconsistent findings.

## ARGUMENT

## I. THIS ACTION DUPLICATES THE FIRST-FILED CALIFORNIA ACTION

In an effort to stave off application of the first-filed rule, Freedom spends the first half of its 18-page Opposition attempting to distinguish this case from IHE's first-filed California Action and the resulting Arbitration that has now been compelled. *See* D.I. 16. These efforts fail.

The tale that Freedom tells in both the Arbitration and here – its pleadings in each were filed the same day, March 12, 2008 – are identical: allegedly, unnamed persons at IHE and IMC secretly agreed to amend the Loan Purchase Agreement through an Addendum that would impair Freedom's rights and, after Freedom bought that agreement, unnamed persons at IHE forced Freedom to sign the Addendum by refusing to purchase additional loans from Freedom or to return Freedom's loan documents. Indeed, *every single allegation* in Freedom's arbitration claim is also in its complaint here. These allegations include:

- Freedom was the victim of a "bait and switch," Arb. Claim ¶ 1 (Declaration of Joshua Plaut, executed June 13, 2008 and filed contemporaneously herewith no ("Plaut Decl."), Ex. A); Compl. ¶ 1;

- Unnamed persons at IHE and IMC secretly agreed to amend the Loan Purchase Agreement, to the detriment of Freedom, through an Addendum, Arb. Claim ¶¶ 17-18, 30; Compl. ¶¶ 2, 28-31, 40, 45;
- In the Asset Purchase Agreement, IMC and IFC represented that the Loan Purchase Agreement had not been amended and that they had not instituted or permitted any material change in the conduct of IMC's business, Arb. Claim ¶ 26; Compl. ¶¶ 32(a), (b), (d), 33;
- In the Asset Purchase Agreement, IMC and IFC represented that they had not omitted any material fact required to make the statements in the Asset Purchase Agreement not misleading, Arb. Claim ¶ 27; Compl. ¶ 32(i);
- In the Asset Purchase Agreement, Freedom was entitled to all of the benefits of the assigned contracts, including the Loan Purchase Agreement, Arb. Claim ¶ 24; Compl. ¶¶ 5, 32(c);
- After closing of the Asset Purchase Agreement, IHE stalled in purchasing additional loans from Freedom and refused to return Freedom's loan documents unless Freedom signed the Addendum, Arb. Claim ¶¶ 34-41; Compl. ¶¶ 3, 37-39; and
- Freedom signed the Addendum under duress, Arb. Claim ¶ 41; Compl. ¶¶ 4, 41, 44.[3]

In its Opposition, Freedom emphasizes that its complaint here alleges breaches of the Asset Purchase Agreement, whereas the California Action and Arbitration concern the Loan Purchase Agreement and Addendum. Opp. at 1, 5-6, 8, 9. But Freedom's arbitration claim also raises issues under the Asset Purchase Agreement. Arb. Claim ¶¶ 26-28. Indeed, Freedom's arbitration claim and its complaint here cite the very same covenants and representations in the Asset Purchase Agreement that were allegedly breached – sections 4.5, 4.8(c), 4.10(b), 4.19(d), 4.19(f), 4.20, 4.25, 4.26, 6.1(b), 6.3(b) and 9.1(g). *See* Arb. Claim ¶¶ 24, 26-28; Compl. ¶¶ 5, 32-34, 47-49, 62, 70, 77-80.

Moreover, Freedom's claims under the Asset Purchase Agreement here are predicated entirely on the Loan Purchase Agreement, its Addendum, and the circumstances surrounding execution of the Addendum. According to Freedom, IFC and IMC allegedly failed to provide Freedom, as required under the Asset Purchase Agreement, with all of the rights and benefits under the Loan Purchase Agreement. Compl. ¶¶ 62, 70, 78. Freedom further alleges that IFC

[3] A comprehensive list of the factual allegations, and their placement in each of Freedom's arbitration claim and complaint here, is annexed at Attachment 1.

and IMC made misrepresentations in the Asset Purchase Agreement by failing to disclose the "secret" agreement to amend the Loan Purchase Agreement to the detriment of Freedom. Compl. ¶¶ 69, 79-80.

The remedy that Freedom seeks here only further underscores that its complaint is duplicative of what has been raised in the California Action and Arbitration. Freedom asks this Court to compel Defendants to, in turn, compel IHE to abandon its repurchase claims in the Arbitration and acknowledge that the Addendum is void; to indemnify Freedom against IHE's claims in the Arbitration; and to award Freedom $8 million – the very amount of defective loans that IHE wants Freedom to repurchase in the Arbitration. Compl. at pp. 20-21.

In sum, both the instant complaint and the California Action and Arbitration involve the same three agreements and the same allegations. As correctly described in Defendants' moving papers, Freedom's claims here are nothing more than its fraud and duress defenses to IHE's repurchase claims in the California Action and Arbitration.

## II.  THE FIRST-FILED RULE BARS THIS ACTION

The first-filed rule applies to prevent "the vexation of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). The rule also seeks to serve judicial economy and to foreclose the possibility of inconsistent rulings on the same facts and issues. *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 977 (3d Cir. 1988), *a'ffd*, 493 U.S. 182 (1990); *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 588 (D. Del. 2007). The first-filed rule unquestionably applies here, and each of its purposes is well served.

### A.  This Action and the Arbitration Are "Materially on All Fours"

Contrary to Freedom's assertions, Opp. at 15-17, this case is duplicative of IHE's California Action and the Arbitration. The matters involve the same agreements, the same facts, and the same alleged conduct by the same parties. *See supra* I. Based on Freedom's own pleadings here and in its arbitration claim, this action is "materially on all fours" with the first-filed California Action and is, therefore, subject to application of the first-filed rule. *See generally Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007).

Freedom wrongly insists that this action (which names IMC and IFC) involves different parties than the Arbitration (which names IHE and Irwin Bank). Opp. at 1, 15. All are Irwin entities. More importantly, Freedom's complaint here is replete with allegations about IHE's alleged misconduct. *See, e.g.*, Compl. ¶¶ 3, 28-31, 37-39, 43-44, 46. And the relief Freedom seeks includes compelling Defendants to, in turn, compel IHE to take certain action in the Arbitration. Compl. at p. 17. The mere fact that Freedom left IHE out of its caption – as a matter of artful pleading – cannot defeat proper application of the first-filed rule.

Moreover, caselaw within this Circuit uniformly rejects Freedom's assertion that complete identity of parties is required. *See Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 408 (E.D. Pa. 2008) ("[C]ourts within and outside this Circuit have found no requirement that the parties in the concurrent actions be the same in order for the first-to-file rule to apply.").[4] Although the Third Circuit has indicated that identity of parties is *one* factor to be considered, *see Grider*, 500 F.3d at 334 n.6; *E.E.O.C.*, 850 F.2d at 971, neither case requires – or even suggests – that identity of parties is a precondition to application of the first-filed rule.

**B. The Purposes of the First-Filed Rule Are Well Served Here**

First, as described above, Freedom's claims constitute duplicative litigation. Defendants should not be put to the burden of litigating the very same issues – the alleged "secret" agreement to amend the Loan Purchase Agreement, and the circumstances surrounding Freedom's execution of the Addendum, Arb. Claim ¶¶ 1, 17-18, 30, 34-41; Compl. ¶¶ 1-4, 28-31, 37-39, 40-41, 44-45, – twice.

Second, two different sets of fact-finders in California and here should not both have to decide these duplicative matters. Freedom wrongly asserts that a single resolution of all issues cannot be had, because IHE's California Action has been ordered to Arbitration. Opp. at 11.

---

[4] *Accord Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 585 (D. Del. 2007); *GPNE Corp.*, 497 F. Supp. 2d at 588-89; *RJF Holdings III, Inc. v. Refractec, Inc.*, No. 03-1600, 2003 WL 22794987, at *2 (E.D. Pa. Nov. 24, 2003); *Advanta Corp. v. Visa U.S.A., Inc.*, No. 96-7940, 1997 WL 88906, at *3 (E.D. Pa. Feb. 19, 1997). Even *APV N. Amer., Inc. v. Sig Simonazzi N. Amer. Inc.*, 295 F. Supp. 2d 393, 397-98 (D. Del. 2002), cited by Freedom, Opp. at 15-17, rejected the argument that the first-filed rule requires identity of parties.

Freedom is wrong. At a minimum, the Arbitrator must decide the predicate for all of Freedom's Asset Purchase Agreement claims here (the alleged "secret" agreement to amend the Loan Purchase Agreement). Moreover, Freedom itself chose to put the relevant representations and covenants in the Asset Purchase Agreement at issue in the Arbitration. Arb. Claim ¶¶ 24, 26-27. The salient point is that only one fact-finder – whether judge or arbitrator – should decide the identical issues in these matters. Any other result would easily give rise to the real possibility of inconsistent rulings and judgments.

### C. Freedom's Other Arguments Against Application of the First-Filed Rule Fail

*The Compelled Arbitration.* Freedom's primary contention is that the first-filed rule cannot apply because "there is no longer any place to which to transfer this case," given that IHE's California Action is now in Arbitration. Opp. at 10. Freedom is wrong as a matter of law and fact. The first-filed rule applies even where the first-filed action has been stayed pending arbitration. *See Todd Shipyards Corp. v. Cunard Line Ltd.*, 708 F. Supp. 1440, 1448 (D.N.J. 1989). The salutatory purposes served by a single fact-finder – whether judge or arbitrator – deciding duplicative issues remain the same. In any event, Freedom is just wrong that there is nowhere to transfer this case. As the transcript before the California court makes clear, that court merely stayed the California Action; the California court denied Freedom's motion to dismiss and the case remains on that court's docket. Transcript at 14 (submitted by Freedom). Indeed, the California court indicated that Freedom's action here *should* be subject to the first-filed rule: "I'm not going to hear the Delaware case [if it is transferred] until after the case that is filed first, which is the case on my docket, has been arbitrated." *Id.*

*The Asset Purchase Agreement's Forum Selection Clause.* Freedom fares no better with its reliance on the Delaware forum clause in the Asset Purchase Agreement. Opp. at 11-14. Freedom's contention again misses the fundamental point: the key issues in this action – and the predicate for Freedom's Asset Purchase Agreement claims – are the Loan Purchase Agreement, the Addendum, and the circumstances surrounding execution of the Addendum. The Addendum incorporates the Loan Purchase Agreement's venue and arbitration clauses, and the Loan

Purchase Agreement provides for California venue and arbitration. Plaut Decl. Exs. B at 22, C at 2. One fact-finder –that in California, the forum of the first-filed case – should decide the issues.

In any event, the fact that another agreement with its own forum clause (the Asset Purchase Agreement) is involved here does not prevent application of the venue and arbitration provisions under the Loan Purchase Agreement. The law is clear that "[e]ven when a claim arises under a contract which contains no arbitration clause, that claim still may be arbitrated when the allegations underlying it 'touch matters' covered by an arbitration clause." *In re NBR Antitrust Litig.*, 207 Fed. Appx. 166, 171 (3d Cir. 2006) (citation omitted). This disposes of Freedom's insistence that the Asset Purchase Agreement's venue clause somehow bars Defendants from seeking to enforce the first-filed rule. Opp. at 13-14.

Freedom's contention also ignores that a forum-selection clause is entitled to "substantial consideration," but "should not receive dispositive weight" by a court evaluating the most appropriate venue for an action. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880-81 (3d Cir. 1995). Even adopting Freedom's convenience analysis, Opp. at 12-13, 14-15, however, there is no question that California provides the more convenient and reasonable venue. Even putting aside that the Loan Purchase Agreement *requires* a California venue, the parties have now been ordered to arbitrate in California the fundamental issues surrounding the Loan Purchase Agreement, the Addendum, and the circumstances surrounding execution of the Addendum. It makes no sense to litigate those same issues here as well.

*Alleged "Zero Effect" of the Arbitration Resolution.* Finally, Freedom claims that each of the issues raised in its action here necessarily must be decided by this Court, regardless of how the California Action and Arbitration are resolved. Opp. at 2, 17. Again, Freedom is wrong. The key issues in this case – the validity of the Addendum and the circumstances surrounding execution of the Addendum – must be decided by the Arbitrator. The Arbitrator's findings on these issues may very well moot all of Freedom's claims here.

Freedom wrongly asserts that if IHE prevails in the Arbitration, Freedom would still have "its claim that IFC and IMC are contractually obligated to force IHE not to demand performance

under the IHE Agreement as amended post-closing." Opp. at 17. If IHE prevails, the Arbitrator will have rejected Freedom's fraud and duress defenses to enforcement of the Loan Purchase Agreement as amended by the Addendum. Freedom, in turn, could not then ask this Court to compel IHE not to demand performance under the amended Loan Purchase Agreement. That would be nothing more than an invitation by Freedom for this Court to issue an inconsistent ruling on the very same issues.

Even if IHE does not prevail in the Arbitration, Freedom's claims here would likely be mooted. For example, if the Arbitrator does not require Freedom to repurchase $8 million in defective loans, then Freedom cannot seek that amount as alleged damages here. Freedom asserts that it would still have "claims for indemnification, breach of representations, and breach of duty to buy back loans." Opp. at 17. But Freedom provides no detail for these alleged claims. At the very least, this Court should not decide these purported claims now, but should stay this case and see whether the Arbitration or California Action moots them.

In sum, Freedom cannot leapfrog over IHE's first-filed repurchase claims in the California Action and Arbitration, and seek to have its fraud and duress defenses to those claims adjudicated here – creating double the work in two forums and giving rise to the very real possibility of inconsistent findings on the same set of allegations.[5]

## III. FREEDOM'S CLAIMS ARE SUBJECT TO ARBITRATION

Freedom's claims should be dismissed, transferred, or stayed for a second and separate reason: Having compelled arbitration of IHE's repurchase claims, Freedom must live with the

[5] Freedom's desire to leapfrog over IHE's underlying repurchase claims and have its fraud and duress defenses decided first is highlighted by the fact that Freedom moved to compel arbitration of IHE's California Action, *but then moved to stay the Arbitration pending this lawsuit here.* Freedom's arbitration claim states:

> [A]t the outset of this arbitration, Freedom will request that the Panel abstain from conducting further proceedings until the Injunction Action [in Delaware] is resolved. The outcome of the Injunction Action should result in the dismissal of this proceeding.

Arb. Claim ¶ 10; *accord id.* ¶ 52. Freedom's complaint here makes the same statement. Compl. ¶ 17. Freedom's Opposition does not, because it cannot, deny this. Opp. at 6-7. Oddly, however, Freedom insists that its requested stay was never granted by the National Arbitration Forum ("NAF"). Opp. at 7. A stay was imposed – twice, and before the filing of Freedom's Opposition. Plaut Decl. Ex. D.

ramifications of its position. In its motion to compel arbitration in the California Action, Freedom characterized the Loan Purchase Agreement's arbitration clause as "broad" and compulsory once arbitration was invoked. Plaut Decl. E at 2. The California court agreed.

As described above, all of Freedom's Asset Purchase Agreement claims here are premised on the Loan Purchase Agreement, the Addendum, and the circumstances surrounding execution of the Addendum. *See infra* I & Attachment 1. Those two agreements include a broad arbitration provision that encompasses "any claim, demand, or cause of action, *which arises out of or is related to* this Agreement . . . ." Plaut Decl. Ex. B at 22 (emphasis added).

The law is clear that such a broad arbitration provision should be construed to encompass claims attacking the formation of the underlying agreement, as well as claims alleging fraud or fraud in the inducement. *See Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) (broad arbitration clause reaches "claims going to the formation of the underlying agreements."); *Kerr-McGee Chem., LLC v. Kimera Pigments Oy*, No. 03-191-GMS, 2003 WL 22299045, at *4-7 (D. Del. Oct. 7, 2003) (same for fraud claim).[6] Freedom's assertion that Defendants breached the Asset Purchase Agreement because IHE and IMC fraudulently agreed to amend the Loan Purchase Agreement to Freedom's detriment falls squarely within the Loan Purchase Agreement's arbitration provision.

In sum, having argued that IHE's California Action is subject to mandatory arbitration, Freedom cannot now be heard to say that its duplicative Asset Purchase Agreement claims here must not also be heard in the Arbitration.

## CONCLUSION

For the reasons discussed herein, Defendants respectfully submit that Freedom's complaint should be dismissed, transferred to the Northern District of California, or stayed pending the California Action and Arbitration.

[6] Such a broad arbitration provision must be enforced even when a party has sued to rescind the larger contract based on fraud in the inducement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Sandvik AB v. Advent Int'l. Corp.*, 220 F.3d 99, 107 (3d Cir. 2000). The only exception to this rule is when a party alleges that the arbitration clause itself was procured by fraud. Freedom makes no such argument here.

                                                      /s/ Raymond J. DiCamillo
Raymond J. DiCamillo (#3188)
dicamillo@rlf.com
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendants*

OF COUNSEL:

David J. Berger
Wilson Sonsini Goodrich & Rosati, OC
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300

Meredith E.Kotler
Joshua A. Plaut
Wilson Sonsini Goodrich & Rosati, PC
1301 Avenue of the Americas, 39th Floor
New York, New York 10019
(212) 999) 5800

Dated: June 13, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which have also been served as noted:

**VIA HAND DELIVERY AND ELECTRONC MAIL**

William M. Lafferty
Theodore Kittila
Karl G. Randall
Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

John K. Crossman
Frank C. Welzer
Zukerman Gore & Brandeis, LLP
875 Third Avenue
New York, NY 10022

*/s/ Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)
dicamillo@rlf.com

# ATTACHMENT #1

**Attachment 1**

| Freedom Allegation | Freedom Arbitration Claim | Freedom Delaware Complaint |
|---|---|---|
| Freedom was the victim of a “bait and switch” | ¶ 1 | ¶ 1 |
| Freedom purchased “valuable” rights and terms under the Loan Purchase Agreement | ¶¶ 1, 13 | ¶¶ 1, 26 |
| There was a secret agreement between IHE, IMC, and IFC prior to the assignment to Freedom, to change §6.01(d) of the Loan Purchase Agreement through an Addendum | ¶¶ 1, 17, 20, 30 | ¶¶ 2, 28, 31 |
| Valuable terms under § 6.01(d) of the Loan Purchase Agreement were not available from other investors in the market | ¶¶ 13, 14, 15 | ¶¶ 1, 26, 27 |
| The Addendum materially affected Freedom’s rights under the Loan Purchase Agreement | ¶ 18 | ¶¶ 30, 42 |
| On August 7, 2006, Freedom entered into the Asset Purchase Agreement | ¶ 21 | ¶ 22 |
| Freedom’s purchase of IMC’s assets involved a two-stage closing | ¶ 22, 29 | ¶ 22 |
| The Asset Purchase Agreement included the assignment of the Loan Purchase Agreement and IMC’s rights under such agreement | ¶¶ 19, 23 | ¶¶ 24, 25 |
| Under §§ 6.3(b) and 9.1(g) of the Asset Purchase Agreement, IFC and IMC were required to obtain approval and consent of third parties (including IHE) | ¶ 24 | ¶¶ 34, 35 |
| Under the Asset Purchase Agreement, pending approval and consent of third parties, Freedom was entitled to all benefits of the Loan Purchase Agreement | ¶ 24 | ¶ 5 |
| Under the Asset Purchase Agreement, IMC and IFC made representations and warranties that the Loan Purchase Agreement had not been amended and that IFC and IMC had not instituted or permitted material changes to IMC’s business (citing APA §§ 4.5, 4.8(c), 4.10(b), 4.19(d), 4.19(f), 4.20, 4.25, 4.26) | ¶ 26 | ¶ 32(a)–(i) |
| From August 7, 2006 to the closing of the Asset Purchase Agreement, IFC and IMC were required to use commercially reasonable efforts to preserve IMC’s business (citing APA § 6.1(b)) | ¶ 28 | ¶ 33(a)–(c) |
| IHE and IMC knew that the Addendum would affect Freedom’s rights as an assignee | ¶ 30 | ¶ 45 |
| After the closing of the Asset Purchase Agreement, IHE stalled the loan review process under the Loan Purchase Agreement | ¶¶ 33, 34 | ¶ 37 |
| Freedom wanted to sell its loans to other buyers | ¶¶ 35, 37 | ¶ 37 |
| Freedom sought return of collateral documents provided to IHE | ¶¶ 35, 36, 37 | ¶¶ 3, 37, 39 |

**Attachment 1**

| Freedom Allegation | Freedom Arbitration Claim | Freedom Delaware Complaint |
|---|---|---|
| Freedom was the victim of a "bait and switch" | ¶ 1 | ¶ 1 |
| IHE refused to return Freedom's collateral documents | ¶¶ 36, 37 | ¶¶ 3, 37 |
| IHE said it would return the collateral documents only if Freedom signed the Addendum | ¶ 36 | ¶¶ 3,40, 43 |
| Freedom was financially harmed by IHE's stalling and refusal to return collateral documents; Freedom was in the midst of a financial disaster | ¶¶ 34, 37, 38 | ¶¶ 3, 39, 40, 44 |
| Freedom executives were forced by former Irwin executives to sign the Addendum under duress | ¶¶ 40, 41 | ¶¶ 2, 3, 4, 40, 44 |
| Irwin sent Freedom repurchase demands | ¶ 42 | ¶ 6 |
| Freedom demands that IHE honor the original unamended Loan Purchase Agreement | ¶ 43 | ¶¶ 6, 7 |